**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | |
|---|---|
| **ROBERT E. MEYER, AS BENEFICIARY OF THE ROBERT E. MEYER (IRA)**, 414 N Delvan, Margate City NJ 08402, derivatively on behalf of NOVAVAX, INC. | Civil Action No.: |

                      Plaintiff,

      v.

**STANLEY C. ERCK**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

**GREGORY F. COVINO**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

**JOHN J. TRIZZINO**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

**JAMES F. YOUNG**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

**GREGG ALTON**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

**RICHARD DOUGLAS**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

**RACHEL KING**
21 Firstfield Road
Gaithersburg, MD 20878

1

**(Montgomery County)**

**MARGARET G. MCGLYNN**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

**MICHAEL A. MCMANUS, JR.**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

**RAJIV I. MODI**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

**DAVID MOTT**
21 Firstfield Road
Gaithersburg, MD 20878
**(Montgomery County)**

Defendants,

and

**NOVAVAX, INC.**
21 Firstfield Road
Gaithersburg, MD 20878
(Montgomery County)

Nominal Defendant.

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Plaintiff Robert Meyer, as beneficiary of the Robert E. Meyer (IRA), ("Plaintiff"), by and through his undersigned attorneys, hereby submits this Verified Stockholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant Novavax, Inc. ("Novavax" or the "Company") against the Individual Defendants (defined herein) seeking to remedy their breaches of fiduciary duties and other violations of law from March 1, 2021 through October 19, 2021 (the

2

"Relevant Period"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon information and belief based on the investigation of undersigned counsel, which includes, without limitation: (a) review and analysis of public filings made by Novavax with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Novavax; (c) review of news articles, stockholder communications, and postings on Novavax's website concerning the Company's public statements; (d) pleadings, papers, and any documents filed with and publicly available from a related pending securities fraud class action pending in this Court captioned, *Sinnathurai v. Novavax Inc., et al.,* Case No. 8:21cv2910 (the "Securities Class Action"); and (e) review of other publicly available information concerning Novavax and the Individual Defendants (as defined below).

## NATURE OF THE ACTION

1.      This is a shareholder derivative action asserting claims for breach of fiduciary duty, insider selling, and unjust enrichment against certain officers and members of the Company's Board of Directors (the "Board").

2.      Novavax, a biotechnology company, focuses on the discovery, development, and commercialization of vaccines to prevent serious infectious diseases and address health needs. The Company's vaccine candidates include NVX-CoV2373, a coronavirus vaccine candidate. Prior to the start of the Relevant Period, Novavax announced that it planned to complete Emergency Use Authorization ("EUA") submissions for NVX-CoV2373 with the U.S. Food and Drug Administration ("FDA") in the second quarter of 2021.

3.      Throughout the Relevant Period, the Individual Defendants caused the Company to make materially false and misleading statements regarding the Company's business, operations,

and prospects. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (i) Novavax overstated its manufacturing capabilities and downplayed manufacturing issues that would impact its approval timeline for NVX-CoV2373; (ii) as a result, Novavax was unlikely to meet its anticipated EUA regulatory timelines for NVX-CoV2373; (iii) accordingly, the Company overstated the regulatory and commercial prospects for NVX-CoV2373; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.       On May 10, 2021, *The Washington Post* reported that Novavax's EUA "filing was delayed by manufacturing regulatory issues, until June at the earliest, according to four people who had recently been briefed on the [C]ompany's plans." Later that day, during after-market hours, on a call that Novavax hosted with investors and analysts to discuss the Company's first quarter 2021 financial and operational results (the "1Q21 Investor Call"), Novavax confirmed that it was unlikely to seek an EUA for NVX-CoV2373 in the U.S. until July 2021 at the earliest—*i.e.*, the third quarter of 2021. The delay was due in part to a regulatory manufacturing issue related to an assay, the people briefed on the trial status told *The Washington Post.* Assays are tests used throughout the manufacturing process to check the contents and quality of vaccines.

5.       Following publication of *The Washington Post* article, Novavax's stock price fell $15.50 per share, or 8.81%, to close at $160.50 per share on May 10, 2021.  Moreover, following the Company's 1Q21 Investor Call, Novavax's stock price continued to fall an additional $22.32 per share, or 13.91%, to close at $138.18 per share on May 11, 2021.

6.       Then, on August 5, 2021, Novavax issued a press release reporting its financial results and operational highlights for the second quarter of 2021. Among other news, Novavax reported that it expected to file for NVX-CoV2373's EUA in the fourth quarter of 2021, rather

than the third quarter of 2021.

7.      On this news, Novavax's stock price fell $46.31 per share, or 19.61%, to close at $189.89 per share on August 6, 2021.

8.      Finally, on October 19, 2021, *Politico* published an article entitled "'They rushed the process': Vaccine maker's woes hamper global inoculation campaign". The *Politico* article reported, in relevant part, that Novavax "faces significant hurdles in proving it can manufacture a shot that meets regulators' quality standards" with respect to NVX-CoV2373. The *Politico* article cited anonymous sources as stating that Novavax's "issues are more concerning than previously understood" and that the Company could take until the end of 2022 to resolve its manufacturing issues and win regulatory authorizations and approvals.

9.      On this news, Novavax's stock price fell $23.69 per share, or 14.76%, to close at $136.86 per share on October 20, 2021.

10.     In short, the U.S. government invested $1.6 billion in Novavax in 2020 — the most it devoted to any vaccine maker at the time — in hopes that it would offer the world another option for a safe and effective vaccine to help protect against Covid-19. But under the helm of the Individual Defendants, the Company has consistently run into production problems. The methods it used to test the purity of the vaccine have fallen short of regulators' standards and the Company has not been able to prove that it can produce a shot that is consistently up to snuff. In connection therewith, the Individual Defendants caused the Company to issue false and misleading statements hiding these problems and the true business condition of the Company.

11.     The Individual Defendants breached their fiduciary duties of loyalty, good faith, due care, oversight, and candor by knowingly engaging in the deceptions alleged herein.

12.     As a direct and proximate result of the Individual Defendants' breaches of fiduciary

duties, Novavax has sustained damages as described below.

## JURISDICTION AND VENUE

13.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332. All Defendants are completely diverse from Plaintiff and the amount in controversy exceeds $75,000.00.

14.     This Court has personal jurisdiction over each of the Defendants because each defendant is either a corporation conducting business and maintaining operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because (i) a substantial portion of the transactions and wrongs complained of herein occurred in the District; and (ii) Defendants have received substantial compensation and other transfers of money in the District by doing business and engaging in activities having an effect in the District.

## PARTIES

16.     Plaintiff is a stockholder of Novavax, was a stockholder of Novavax at the time of the wrongdoing alleged herein and has been a stockholder of Novavax continuously since that time. Plaintiff is a citizen of New Jersey.

17.     Defendant Novavax is a Delaware corporation with principal executive offices located at 21 Firstfield Road, Gaithersburg, Maryland 20878.  Novavax's common stock trades in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "NVAX".

18.     Defendant Stanley C. Erck ("Erck") has served as the President and Chief

Executive Officer ("CEO") of Novavax since April 2011. Defendant Erck has served as a Novavax director since June 2009 and has served as its Executive Chairman of the Board beginning in February 2010. Upon information and belief, Defendant Erck is a citizen of the Commonwealth of Massachusetts.

19.     Defendant Gregory F. Covino ("Covino") served as Novavax's Chief Financial Officer ("CFO") and Executive Vice President ("EVP") from November 2020 until April 2021 when he stepped down for "personal reasons." Upon information and belief, Defendant Covino is a citizen of the Commonwealth of Massachusetts.

20.     Defendant John J. Trizzino ("Trizzino") served as Novavax's Interim CFO from April 12, 2021 to August 16, 2021. Trizzino also serves as the Company's Chief Commercial Officer, Chief Business Officer, and an EVP. Upon information and belief, Defendant Trizzino is a citizen of Maryland.

21.     Defendant James F. Young ("Young") has served on the Novavax Board since April 2010 and was appointed Chairman in April 2011. Upon information and belief, Defendant Young is a citizen of Maryland.

22.     Defendant Gregg Alton ("Alton") has served on the Novavax Board since November 2020. Upon information and belief, Defendant Alton is a citizen of California.

23.     Defendant Richard Douglas ("Douglas") has served on the Novavax Board since 2010. Upon information and belief, Defendant Douglas is a citizen of the Commonwealth of Massachusetts.

24.     Defendant Rachel King ("King") has served on the Novavax Board since 2018. Upon information and belief, Defendant King is a citizen of Maryland.

25.     Defendant Margaret G. McGlynn ("McGlynn") has served on the Novavax Board since 2020. Upon information and belief, Defendant McGlynn is a citizen of the Commonwealth of Pennsylvania.

26.     Defendant Michael A. McManus, Jr. ("McManus") has served on the Novavax Board since 1998. Upon information and belief, Defendant McManus is a citizen of New York.

27.     Defendant Rajiv I. Modi ("Modi") has served on the Novavax Board since 2009. Upon information and belief, Defendant Modi is a citizen of India.

28.     Defendant David Mott ("Mott") has served on the Novavax Board since 2009. Defendant Mott is currently a private investor through Mott Family Capital and Defendant Mott was given approximately 65,000 shares of Novavax common stock prior to his appointment to the Board. On September 23, 2021, while Novavax's securities traded at artificially inflated prices, Mott personally profited by selling 24,961 shares of Novavax common stock at a weighted average price of $253 per share, on the basis of adverse, material nonpublic information about Novavax thereby pocketing about $6.3 million in illegal insider trading proceeds. At the time Defendant Mott made his sale, it was the biggest sale of Novavax shares made by an insider individual in the last twelve months. Upon information and belief, Defendant Mott is a citizen of Montana.

29.     Defendants Erck, Covino, Trizzino, Young, Alton, Douglas, King, McGlynn, McManus, Modi and Mott are referred to herein as the "Individual Defendants."

30.     Novavax and the Individual Defendants are collectively referred to herein as "Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

31.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual

Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

33.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Novavax were required to, among other things:

a.     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

b.     conduct the affairs of the Company in a lawful, efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c.     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the

Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

      d.    remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

      e.    ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

34.    Each Individual Defendant, as a director and/or officer, owed to the Company and its stockholders the fiduciary duties of loyalty, good faith and candor in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a conscious disregard for their duties to the Company and its stockholders that Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

35.    The Company has adopted the Novavax Code of Business Conduct and Ethics (the "Code") that applies to all employees, including officers and members of the Board. The Code states:

> Integrity
>
> At Novavax, we understand and accept our responsibility to provide effective and accessible vaccines to populations throughout the globe in accordance with our Core Principles, and in compliance with all applicable laws and regulations. We recognize that healthcare laws, regulations, and situations involving compliance

can be complicated. When faced with a tough decision, we must always consider if the activity is legal, ethical, and consistent with our Core Principles—and if we don't know or are unsure, we ask.

\*\*\*

Quality

We comply with all governmental and regulatory agency requirements and industry standards relating to the manufacturing of our vaccines including good laboratory practices (GLP), current good manufacturing practices (cGMP), and good distribution practices (GDP) to ensure that our vaccines are manufactured according to the highest standards and are safe and effective. All Novavax employees are required to report any quality issues associated with a Novavax product within one business day of becoming aware of the event. If you become aware of any quality issue relating to our vaccines, please immediately report this matter to qualitycompliance@novavax.com.

\*\*\*

Records and Disclosure

Our Company is subject to extensive and complex reporting requirements. Our operations must comply with all applicable regulatory, accounting, financial and other rules, and regulations of the jurisdictions in which we operate. All of our financial records, accounts, and financial statements must be clear and complete, maintained in reasonable detail, and appropriately reflect our Company's transactions and activities.

It is the policy of Novavax to provide full, fair, accurate, timely, and understandable disclosure in reports and documents filed with or submitted to the U.S. Securities and Exchange Commission (SEC) and other regulatory authorities and in other public communications.

Each of us is responsible for information and records under our control so we need to be familiar with the procedures that apply to our jobs. Documents should be reported, disclosed, and retained in accordance with our internal policies and regulatory requirements. Do not hesitate to contact Legal if there is any doubt or if you have any questions.

Accurate Information for Investors

Further, as a publicly-traded company, all employees have a responsibility to ensure that the Company provides the investing public with information that reflects the Company's business transactions. Therefore, all of our public disclosures that are filed with government agencies or communicated to the public must be complete, fair, accurate, timely, and understandable. In addition, they must be prepared,

reported, and maintained in accordance with all applicable laws and accounting standards. This obligation applies to all employees, including all executives, with any responsibility for preparing such reports, including drafting, reviewing, and signing or certifying the information they contain. The Company must communicate to the extent required by government agencies about its operations, without compromising proprietary and confidential information.

*** 

COMMUNICATIONS TO OUR INVESTORS

We are required under U.S. federal securities laws and European laws to provide our stockholders and the public with periodic disclosure regarding our business and financial condition (such as quarterly and annual reports and materials for our annual stockholders meeting). We provide additional disclosures through our quarterly earnings calls and press releases. All Novavax employees who participate in the preparation or dissemination of these disclosures, or who provide information that they know may be used in the preparation of these disclosures, have a legal and ethical duty to ensure that the content of the disclosures is accurate, complete, and timely.

We have developed disclosure controls and procedures that are designed to ensure that all public disclosures are accurate, complete, and timely. If you become aware that our public disclosures are not accurate, complete, and timely, or become aware of a transaction or development you believe may require disclosure, you should report the matter immediately to Legal and Corporate Compliance.

36.     Additionally, per the Audit Committee Charter, during the Relevant Period the purpose of the Audit Committee, comprised of Defendants Alton (Chair), Douglas, and McManus (the "Audit Committee Defendants"), was to "assist the Board in in fulfilling its responsibilities for oversight of:"

the Company's accounting and financial reporting processes; the preparation, presentation and integrity of the financial reports and other financial information provided by the Company to any government or regulatory body, the public or other users thereof; the adequacy and efficacy of the Company's systems of internal accounting, auditing and financial controls, the Company's compliance with legal and regulatory requirements; the conduct, independence and qualifications of the Company's independent auditor; the performance of the annual independent audit of the Company's financial statements; the Company's compliance with applicable federal and state laws and regulations; and the implementation and operation of the Company's corporate compliance program (the "Compliance Program").

37.     Per the Audit Committee, the responsibilities and duties of the Audit Committee

Defendants included the following:

*Financial Statements and Disclosures*

- The Committee shall review with management and the independent auditor the audited financial statements to be included in the Company's Annual Report on Form 10-K (or the Annual Report to Stockholders if distributed prior to the filing of the Form 10-K) and the report thereon, and including any disclosures with respect thereto in Management's Discussion and Analysis, and review and consider with the independent auditor the matters required to be discussed by PCAOB Auditing Standard No. 1301, Communications with Audit Committees, and any other applicable requirements of the PCAOB. Such review shall take place prior to the publication of the annual audited financial statements, and the Committee shall make its recommendation to the Board with respect to their inclusion in the Company's Annual Report on Form 10-K or Annual Report to Stockholders, as appropriate.

- As a whole, or between meetings through the Committee Chair, the Committee shall review with the independent auditor the Company's interim financial results to be included in the Company's quarterly reports to be filed with the SEC, and including any disclosures with respect thereto in Management's Discussion and Analysis, and the matters required to be discussed by applicable requirements of the PCAOB. Such review will occur prior to the Company's publication of the interim financial results.

- The Committee, as a whole, or between meetings through the Committee Chair, shall review with management and the independent auditor the Company's earnings press releases, including the type of information to be included and its presentation, and the use of any pro forma, adjusted or other non-GAAP financial information, prior to their release to the public.

- The Committee shall discuss with management and the independent auditor any significant issues regarding the accounting principles, practices and judgments made in connection with the preparation of the Company's financial statements. In this regard, the Committee shall obtain and review a report from the independent auditor regarding all critical accounting policies and practices to be used in the Company's financial statements and any major changes thereto, all alternative treatments of financial information within GAAP that have been discussed with management, the ramifications of the use of such alternative disclosures and treatments and the treatment preferred by the independent auditor, and other material written communications between the independent auditor and management.

- The Committee shall review the Company's disclosure controls and procedures, and management's assessment thereof.

- As necessary, the Committee shall review with the independent auditor and management:

  - significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements;

  - the clarity of the financial disclosures made by the Company;

  - potential changes in GAAP and other regulatory and accounting initiatives, and their effects on the Company's financial statements; and

  - the effect of any off-balance sheet structures and aggregate contractual obligation on the Company's financial statements.

*Internal Controls*

- The Committee shall review and discuss with management, internal audit staff (or other personnel responsible for the internal audit function) and the independent auditor the quality, adequacy and effectiveness of the Company's accounting, financial and other internal controls and procedures, and elicit recommendations for both the improvement of existing controls and adoption of new controls, including any special steps or remedial measures adopted in light of material control weaknesses or significant deficiencies and, to the extent applicable, the Company's internal controls report and the independent auditor's internal controls report prior to the filing of any Annual Report on Form 10-K required to be filed by the Company with the SEC.

- The Committee shall obtain from management and the independent auditor and review the disclosures made in connection with the certification process regarding the effectiveness of the Company's internal control structure and procedures for financial reporting, including (i) all significant deficiencies and material weaknesses in the design and operation of internal controls over financial reporting, (ii) any fraud (whether or not material) that involves management or other employees having a significant role in the Company's internal controls over financial reporting, (iii) all changes to internal controls over financial reporting, including corrective actions, since the last Annual Report on Form 10-K or Quarterly Report on Form 10-Q, as applicable, and (iv) to the extent applicable, any disclosures made during the certification process for the Annual Report on Form 10-K and any Quarterly Report on Form 10-Q.

*Internal Audit Oversight*

- With respect to the Company's internal audit function, the Committee shall:

  - review and discuss with the principal internal auditor of the Company regular reports from the principal internal auditor to the Committee on the scope and the results of the work performed by the internal audit function;

  - review the significant reports to management prepared by the internal audit function and management's responses;

  - at least annually review and discuss with the principal internal auditor of the Company and management the annual internal audit plan and the adequacy of internal audit resources (including with respect to budget and staffing), the performance and effectiveness of the internal audit function, and any recommended changes in the planned scope of the internal audit; and

  - review and concur in the appointment, and dismissal and replacement when appropriate, of the principal internal auditor, and the compensation of the principal internal auditor.

*Compliance Oversight and Reporting*

- The Committee shall oversee the establishment of procedures for the receipt, retention, and treatment of complaints received by the Company regarding accounting, internal accounting controls and auditing matters, the confidential and anonymous submission by employees of the Company of concerns regarding questionable accounting or auditing matters, and the operation of a whistleblower's communication system allowing employees, officers, directors and the general public to make reports about potential legal and compliance violations, including anonymous reports where permitted by law.

- The Committee shall review with the Company's Chief Legal Officer and/or outside counsel legal matters that may have material impact on the financial statements, the Company's compliance with legal and regulatory requirements, and material violations of the Company's Code of Business Conduct and Ethics, as well as any material reports or inquiries received from, or correspondence with, regulators or governmental agencies.

- The Committee shall ensure that the Company maintains a written Code of Business Conduct and Ethics and other policies and procedures that effectively address the Company's compliance obligations, avoidance of conflicts of interest, and other related matters. The Committee, in consultation with the Chief Compliance Officer or other Compliance Program officials, shall recommend to the Board any changes to the Code of Business Conduct and Ethics deemed necessary or appropriate by the

Committee.

- The Committee shall review and discuss with the Chief Legal Officer and Chief Compliance Officer an annual plan for the Company's Compliance Program and monitor such plan's progress and results during the year through regular reports from the Chief Legal Officer and Chief Compliance Officer to the Committee on the Company's Compliance Program.

- The Committee shall ensure that the Company, led by the Compliance Program, promptly responds to detected instances of non-compliance and takes appropriate corrective actions, including, where appropriate, employee discipline, the adoption of preventative measures, and reporting of non-compliance to relevant government authorities.

*Risk Assessment and Risk Management*

- The Committee shall periodically (but no less than annually) review and discuss guidelines and policies by which the Company undertakes risk assessment and risk management, and discuss with management the Company's major financial risk exposures and the steps taken or to be taken to monitor and control such exposures, including the Company's risk assessment and risk management policies.

- The Committee shall oversee the establishment of an Enterprise Risk Management ("ERM") system by the Legal Department and the Compliance Program and at least annually, receive and review the findings of the Legal Department's annual ERM review.

## SUBSTANTIVE ALLEGATIONS

### BACKGROUND

38.     Novavax is a biotechnology company that focuses on the discovery, development, and commercialization of vaccines to prevent serious infectious diseases and address health needs.

39.     The Company's product candidates include, among others, NVX-CoV2373, which is in development as a vaccine for COVID-19.

40.     The Company received significant funding for NVX-CoV237 from the government. The Company's annual report on Form 10-K with the SEC on March 1, 2021, reporting the Company's financial and operating results for quarter and year ended December 31,

2020 (the "2020 10-K") (the "2020 10-K") stated the following regarding NVX-CoV237 funding:

***COVID-19 Vaccine Funding***

In May 2020, we signed a restated funding agreement which was amended in November 2020, with CEPI (the "CEPI Funding Agreement"), under which we are entitled to receive funding of up to $399.5 million to be used by us for the development of NVX-CoV2373. Pursuant to the CEPI Funding Agreement, if approved, a portion of the NVX-CoV2373 supply produced by us, other than vaccine manufactured under the OWS Agreement (as defined below), is expected to be procured and allocated through the COVAX Facility component of the Access to COVID-19 Tools (ACT) Accelerator, an international equitable vaccine purchasing initiative launched by the World Health Organization, Gavi the Vaccine Alliance ("Gavi"), CEPI and other global non-governmental organizations and governmental leaders in 2020.

In June 2020, we were awarded a contract by the DoD which was last amended in January 2021 under which we are entitled to receive funding of up to $45.7 million to support certain activities related to the development of NVX-CoV2373, including the manufacturing and delivery of 10 million doses of NVX-CoV2373 to the U.S. government.

In July 2020, we were selected to participate in OWS, a U.S. government sponsored program working to accelerate the development, manufacturing and distribution of COVID-19 vaccines, therapeutics and diagnostics. Through a Base Agreement and a Project Agreement (together, the "OWS Agreement") entered into with Advanced Technology International, Inc., the Consortium Management Firm acting on behalf of the Medical CBRN Defense Consortium in connection with OWS, which was last amended in December 2020, we have been allotted funding of $1.6 billion and are entitled to receive maximum funding up to $1.75 billion to support certain activities related to the development of NVX-CoV2373, and including the manufacture and delivery of 100 million doses of NVX-CoV2373 to the U.S. government. We expect this funding will assist in rapidly developing our large-scale manufacturing capacity and transitioning into ongoing production, including the capability to stockpile and distribute large quantities of NVX-CoV2373 for use in clinical trials and potentially for commercial sale, if authorized for emergency use or licensed. The OWS Agreement will fund the late-stage clinical studies necessary to determine the safety and efficacy of NVX-CoV2373, including PREVENT-19. Funding under the OWS Agreement is also expected to support our plans to file submissions for EUA and licensure with the FDA.

41.     Given the COVID-19 pandemic, the Individual Defendants knew that the market and the investors' sole focus was NVX-CoV237. Accordingly, the Individual Defendants had a fiduciary duty to ensure that all statements issued by the Company regarding the vaccine and any

issues associated therewith were accurately and truthfully portrayed.

**THE INDIVIDUAL DEFENDANTS CAUSE THE COMPANY TO ISSUE MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE RELEVANT PERIOD**

42.     The Relevant Period begins on March 1, 2021, the day Novavax issued a press release, during after-market hours, announcing its fourth quarter and full year 2020 financial results and operational highlights (the "4Q/FY20 Press Release"). That press release stated, in relevant part, that Novavax "[e]ngaged in ongoing dialogue with [the FDA] . . . with potential for EUA filing in the second quarter of 2021"; that Novavax "[i]ncreased projected global manufacturing capacity to over 2 billion annualized doses when at full-capacity, expected to occur in mid-2021[,]" with "[a]pproximately one billion doses to be manufactured by Serum Institute of India Private Limited (SIIPL)"; that Novavax "[c]ompleted collaborations for global manufacturing, commercialization and distribution of NVX-CoV2373"; and that the Company "[s]ecured agreements for approximately 200 million doses of NVX-CoV2373[.]"

43.     The 4Q/FY20 Press Release also quoted Defendant Erck, who stated, in relevant part, that "Novavax continues to make significant strides towards bringing NVX-CoV2373 . . . to market"; that "[w]e believe [NVX-CoV2373's] attributes support [EUA] and have initiated dialogue with regulators to pursue appropriate regulatory authorization"; that "we have secured agreements for the delivery of approximately 300 million doses of NVX-CoV2373"; that "we are proud to partner with the Serum Institute of India to jointly supply 1.1 billion doses of NVX-CoV2373 to Gavi through the COVAX Facility"; and that "[w]e continue to work tirelessly to make final commercial preparations in advance of delivering our product across the globe."

44.     Also on March 1, 2021, during after-market hours, Novavax filed the 2020 10-K signed by Defendants Erck, Young, Alton, Douglas, King, McGlynn, McManus, Modi, and Mott.

The 2020 10-K stated: "We . . . plan to file submissions for [EUA] with the FDA and expect to complete our EUA filing in the second quarter of 2021."

45.     The 2020 10-K also stated, in relevant part, that "[w]ith respect to the global manufacturing and supply of NVX-CoV2373, we have secured manufacturing for our antigen component and Matrix-M adjuvant, as well as secured fill/finish activities for NVX-CoV2373 at several sites globally"; that "[t]hrough our various manufacturing partnerships, we expect our projected global manufacturing production rate of NVX-CoV2373 to be over two billion doses annually when we are at full capacity, which we expect to occur in mid-2021"; and that "[t]hese additional partnerships will further increase our production capacity and are expected to support a rapid roll-out of NVX-CoV2373 globally."

46.     Additionally, the 2020 10-K stated that "we anticipate bringing our NVXCoV2373 vaccine candidate to market following global regulatory approvals which, if achieved, should significantly impact revenue"; that, "[i]n anticipation, we have entered into various APAs [advance purchase agreements] with government customers that are expected to result in the delivery of approximately 200 million doses of NVX-CoV2373 throughout 2021 and into the first half of 2022"; and that "[w]e also entered into multiple supply and license agreements with strategic partners to supply NVX-CoV2373 in their specified territories under which we are entitled to receive royalty revenue from the sale of NVX-CoV2373 by such partners."

47.     Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Erck and Covino certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended[,]" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the

19

Company for the dates and periods covered by th[e 2020 10-K]."

48.     The statements referenced in ¶¶ 42-47 were materially false and misleading because the Individual Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (i) Novavax overstated its manufacturing capabilities and downplayed manufacturing issues that would impact its approval timeline for NVX-CoV2373; (ii) as a result, Novavax was unlikely to meet its anticipated EUA regulatory timelines for NVX-CoV2373; (iii) accordingly, the Company overstated the regulatory and commercial prospects for NVX-CoV2373; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**THE TRUTH PARTIALLY STARTS TO EMERGE**

49.     On May 10, 2021, *The Washington Post* reported that Novavax's EUA "filing was delayed by manufacturing regulatory issues, until June at the earliest, according to four people who had recently been briefed on the [C]ompany's plans." Specifically, *The Washington Post* reported that "[t]he delay is due in part to a regulatory manufacturing issue related to an assay," according to the people briefed on the trial status, which "are tests used throughout the manufacturing process to check the contents and quality of vaccines."

50.     Later that day, during after-market hours, on the Company's 1Q21 Investor Call, Novavax confirmed that it was unlikely to seek EUA for NVX-CoV2373 in the U.S. until July 2021 at the earliest—*i.e.*, the third quarter of 2021.

51.     Following publication of *The Washington Post* article, Novavax's stock price fell $15.50 per share, or 8.81%, to close at $160.50 per share on May 10, 2021.  Moreover, following

the Company's 1Q21 Investor Call, Novavax's stock price continued to fall an additional $22.32 per share, or 13.91%, to close at $138.18 per share on May 11, 2021. Despite these declines in the Company's stock price, Novavax securities continued to trade at artificially inflated prices throughout the remainder of the Relevant Period because of the Individual Defendants' continued misstatements and omissions regarding NVX-CoV2373's EUA regulatory timeline, as well as Novavax's manufacturing capabilities and manufacturing issues that were likely to impact the approval timeline for NVX-CoV2373.

52.     For example, also on May 10, 2021, during after-market hours, Novavax issued a press release reporting the Company's first quarter 2021 financial results and operational highlights (the "1Q21 Press Release"). That press release stated, in relevant part, that Novavax "[s]ecured additional manufacturing capacity for NVX-CoV2373 globally, with continued progress toward achieving full manufacturing capacity"; that Novavax's "[a]nticipated capacity [is] revised to 100 million doses per month by the end of the third quarter of 2021, with remainder of capacity expected to come online in the fourth quarter to support 150 million doses per month"; that "Novavax [is] to manufacture and distribute 350 million doses to participants of the COVAX Facility"; that Novavax "[p]rogressed regulatory processes for authorization of NVX-CoV2373 with multiple regulatory agencies globally"; and that Novavax "[i]ntend[s] to file for authorization with the [FDA] . . . in the third quarter of 2021[.]"

53.     The 1Q21 Press Release also quoted Defendant Erck, who stated that "Novavax made great strides over the first quarter to pave the path for our COVID-19 vaccine candidate, NVX-CoV2373"; that, "[i]n parallel, we have secured additional manufacturing and supply agreements, expanding our global supply chain to over 10 countries"; that, "[i]n the coming months, we look forward to delivering on critical milestones, including [*inter alia*] . . . completing

our regulatory submissions"; and that, "[a]s we continue our dialogue with regulatory authorities for authorization, we remain committed to promptly delivering our vaccine globally, ensuring equitable access and expansive distribution."

54.     That same day, also during after-market hours, Novavax filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q"). The 1Q21 10-Q stated, in relevant part, that "[a]s of May 2021, we continue to work to complete various CMC [chemistry, manufacturing, and controls] requirements, which ensure that our manufacturing processes are in accordance with regulatory standards"; and that "[w]e plan to file submissions for [EUA] with the FDA and aim to complete our EUA filing [for NVX-CoV2373] in the third quarter of 2021."

55.     With respect to Novavax's manufacturing capabilities for NVX-CoV2373, the 1Q21 10-Q stated, in relevant part, that "[w]e have established a global manufacturing and supply chain to support the commercialization of NVX-CoV2373"; that "[w]ith significant progress made throughout 2020 and through the first quarter of 2021, our global supply chain now spans over 10 countries and includes Novavax owned facilities in the Czech Republic and Sweden, as well as partnerships with contract manufacturing organizations around the world"; that "[i]n the first quarter of 2021, we took additional steps to expand our global supply chain and ready our company for commercialization[,]" which "included securing additional manufacturing capacityfor NVX-CoV2373, as well as furthering existing collaborations with manufacturing partners globally"; and that, "[i]n the quarter, we also continued to advance CMC activities[,]" including "ongoing analytical testing and product characterization, as well as the qualification and validation of assays needed to demonstrate process consistency across our network of manufacturing facilities."

56.     The 1Q21 10-Q further assured investors that "we expect our global manufacturing

capacity of NVX-CoV2373 to be approximately 100 million doses per month by the end of the third quarter of 2021"; that "[w]e anticipate the remainder of our manufacturing capacity will come online in the fourth quarter of 2021, which we expect will support total global manufacturing capacity of approximately 150 million doses per month"; that, "[i]n April 2021, our Base Agreement and a Project Agreement (together, the 'OWS Agreement') . . . was amended to fully fund the agreement up to $1.75 billion to support certain activities related to the development of NVX-CoV2373[,]" including "the manufacture and delivery of 100 million doses of NVX-CoV2373 to the U.S. government"; and that "[w]e expect this funding will assist in rapidly developing our large-scale manufacturing capacity and transitioning into ongoing production, including the capability to stockpile and distribute large quantities of NVX-CoV2373 for use in clinical trials and potentially for commercial sale, if authorized for emergency use or licensed."

57.     Appended as exhibits to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 47, *supra*, signed by Defendants Erck and Trizzino.

58.     The statements referenced in ¶¶ 52-57 were materially false and misleading because the Individual Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (i) Novavax overstated its manufacturing capabilities and downplayed manufacturing issues that would impact its approval timeline for NVX-CoV2373; (ii) as a result, Novavax was unlikely to meet its anticipated EUA regulatory timelines for NVX-CoV2373; (iii) accordingly, the Company overstated the regulatory and commercial prospects for NVX-CoV2373; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

59.     On August 5, 2021, Novavax issued a press release reporting its second quarter

2021 financial results and operational highlights (the "2Q21 Press Release"). Among other news, Novavax reported that it "[e]xpect[s] to submit for [EUA] to the [FDA for NVX-CoV2373] in the fourth quarter of 2021[,]" rather than the third quarter of 2021.

60.     On this news, Novavax's stock price fell $46.31 per share, or 19.61%, to close at $189.89 per share on August 6, 2021. Despite this decline in the Company's stock price, Novavax securities continued to trade at artificially inflated prices throughout the remainder of the Relevant Period because of the Individual Defendants' continued misstatements and omissions regarding NVX- CoV2373's EUA regulatory timeline, as well as Novavax's manufacturing capabilities and manufacturing issues that were likely to affect the approval timeline for NVX-CoV2373.

61.     For example, the 2Q21 Press Release stated, *inter alia*, that Novavax"[c]ollaborated with partners globally to progress toward anticipated manufacturing capacity" and that Novavax is "[o]n track to achieve capacity of 100 million doses per month by the end of the third quarter of 2021 and 150 million doses per month by the end of the fourth quarter 2021[.]"

62.     The 2Q21 Press Release also quoted Defendant Erck, who stated, in relevant part, that "[w]e are highly encouraged by the filing of regulatory submissions in multiple markets, made in partnership with Serum Institute of India[,]" and that "[w]e view these submissions as the first of many filings to come, which will allow NVX-CoV2373 to be made available at a global scale[.]"

63.     Also on August 5, 2021, during after-market hours, Novavax filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "2Q21 10-Q"). The 2Q21 10-Q stated, *inter alia*, that "[a]sof August 2021, we continue to work to complete various Chemistry, Manufacturing and Controls ('CMC') requirements, which ensure that our manufacturing processes are in accordance with regulatory standards"; that "[f]unding under the OWS Agreement is expected to support our plans

to file submissions for EUA and licensure with the FDA"; that "[t]he U.S. government has recently instructed us to prioritize alignment with the FDA on our analytic methods before conducting additional U.S. manufacturing"; and that "[t]he U.S. government also instructed us to proceed with work under the OWS Agreement related to all other activities including [*inter alia*] . . . regulatory interactions, analytics/assays and characterization of manufactured vaccine and project management."

64.     With respect to Novavax's manufacturing capabilities for NVX-CoV2373, the 2Q20 10-Q stated, in relevant part, that "[w]e have established a global manufacturing and supply chain to support the commercialization of NVX-CoV2373"; that "[w]ith significant progress made throughout 2020 and through the second quarter of 2021, our global supply chain spans over ten countries and includes Novavax-owned facilities in the Czech Republic and Sweden, as well as partnerships with contract manufacturing organizations around the world"; that, "[i]n the second quarter of 2021, we remained focused on readying our global supply chain for commercialization in order to ensure we promptly deliver NXV-CoV2373 upon anticipated regulatory authorizations"; that "[w]e expect our global manufacturing capacity of NVX- CoV2373 to be approximately 100 million doses per month by the end of the third quarter of 2021"; and that "[w]e anticipate the remainder of our manufacturing capacity will be ready by the end of the fourth quarter of 2021, which we expect will support total global manufacturing capacity of approximately 150 million doses per month."

65.     Appended as exhibits to the 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 47, *supra*, signed by Defendants Erck and Trizzino.

66.     The statements referenced in ¶¶ 61-65 were materially false and misleading because the Individual Defendants made false and/or misleading statements, as well as failed to disclose

material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (i) Novavax overstated its manufacturing capabilities and downplayed manufacturing issues that would impact its approval timeline for NVX-CoV2373; (ii) as a result, Novavax was unlikely to meet its anticipated EUA regulatory timelines for NVX-CoV2373; (iii) accordingly, the Company overstated the regulatory and commercial prospects for NVX-CoV2373; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### THE FULL TRUTH EMERGES

67.     On October 19, 2021, *Politico* published an article entitled "'They rushed the process': Vaccine maker's woes hamper global inoculation campaign". The *Politico* article reported that Novavax "faces significant hurdles in proving it can manufacture a shot that meets regulators' quality standards" with respect to NVX-CoV2373. The *Politico* article also cited anonymous sources as stating that Novavax's "issues are more concerning than previously understood" and that the Company could take until the end of 2022 to resolve its manufacturing issues and win regulatory authorizations and approvals.

68.     Specifically, the *Politico* article reported that Novavax's "delay, which was confirmed by three other people familiar with the discussions between Maryland-based Novavax and the Biden administration, represents a major setback in the effort to vaccinate the world in the wake of new, more transmissible variants." For example, according to the *Politico* article, the Company "has consistently run into production problems[,]" including "[t]he methods it used to test the purity of the vaccine[,]" which "have fallen short of regulators' standards" as Novavax "has not been able to prove that it can produce a shot that is consistently up to snuff, according to multiple people familiar with Novavax's difficulties."

69.     The *Politico* article also reported that "[a]lthough Novavax recently attested to some of its analytics and testing issues in a quarterly filing with the [SEC], the [C]ompany's issues are more concerning than previously understood, according to two of the people with direct knowledge of the matter." For example, while "it is generally understood that each [COVID-19] vaccine batch should reach at least 90 percent" in terms of purity levels, Novavax "has struggled to attain anywhere close to that, one of the people with direct knowledge of the situation said[,]" and, according to "[a]nother person familiar with the [C]ompany's manufacturing process[,]" the Company "has recently shown purity levels hovering around 70 percent."

70.     Moreover, the *Politico* article revealed that Novavax's manufacturing issues were so severe that they strained global COVID-19 vaccination efforts. For example, with respect to the COVID-19 Vaccines Global Access initiative, also known as COVAX, the *Politico* article found that "[t]he global coalition is already behind on hundreds of millions of planned doses this month" and "is now also at risk of missing its already downgraded 2021 target." The *Politico* article also quoted the director of the Duke Global Health Innovation Center, who stated: "COVAX continues to be challenged for adequate supply . . . in that context, Novavax's manufacturing challenges and delays have been massively disruptive[.]"

71.     The *Politico* article also found that Novavax was already aware of specific concerns with NVX-CoV2373's manufacturing process, stating that "senior Trump administration officials on Operation Warp Speed . . . repeatedly warned the [C]ompany that it risked running into problems in scaling up manufacturing of the shot, two people with direct knowledge of those discussions said"; that, "[i]n particular, they worried that Novavax would have difficulty ensuring that the vaccine consistently met the FDA's rigorous quality standards once the vaccine went into mass production — the exact problem that has now stymied the company for months"; and that

Novavax "rushed the process" and "can't make" the vaccine, according to one of the people with knowledge of the matter.

72.     Finally, the *Politico* article revealed that despite the Individual Defendants' fiduciary duty to issue accurate statements to investors, the Individual Defendants had repeatedly downplayed NVX-CoV2373's manufacturing issues, and the U.S. government's confidence in Novavax's ability to successfully manufacture the drug had waned. For example, the *Politico* article stated, *inter alia*:

> U.S. officials working with the [C]ompany are not as confident [as Novavax is in its manufacturing capabilities], according to three people with knowledge of the matter. Novavax's manufacturing problems are seen as far more difficult to fix than the sanitary and design concerns that halted production of J&J's vaccine at the Emergent plant earlier this year, those people said.

> And even as the [C]ompany begins to seek regulatory approval in other countries, there remains doubt in the U.S. that it has solved the fundamental vaccine purity flaws that the people with knowledge said have affected its ability to make doses at plants around the world.

> Several vaccine batches have already been discarded, and four people with knowledge of the matter say U.S. officials now no longer expect the [C]ompany to win FDA sign-off on the vaccine until next year at the earliest.

> "At some level, I think the efficacy was never going to outweigh the risk associated with the impurity that was in there," said one of the people with knowledge of the matter. "I'm not surprised this is where we are."

73.     On this news, Novavax's stock price fell $23.69 per share, or 14.76%, to close at $136.86 per share on October 20, 2021.

## **DAMAGES TO NOVAVAX**

74.     As a result of the Individual Defendants' improprieties, Novavax disseminated improper, public statements concerning Novavax's operations, prospects and internal controls. This misconduct has devastated Novavax's credibility.

75.     As a direct and proximate result of the Individual Defendants' actions, Novavax has expended, and will continue to expend, significant sums of money defending and paying any settlement in the Securities Class Action as well as expenses incurred in trying to cure the manufacturing problems in connection with NVX-CoV2373.

76.     As a direct and proximate result of the Individual Defendants' actions as alleged above, Novavax's market capitalization has been substantially damaged, losing millions of dollars in value as a result of the conduct described herein.

77.     Lastly, the actions of the Individual Defendants have irreparably damaged Novavax's corporate image and goodwill. For at least the foreseeable future, Novavax will suffer from what is known as the "liar's discount," a term applied to the stocks of companies that have been implicated in illegal behavior and have misled the investing public, such that Novavax's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND ALLEGATIONS

78.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

79.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

80.     Plaintiff is an owner of Novavax common stock and was an owner of Novavax common stock at all times relevant hereto.

81.     Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.

82.     As a result of the facts set forth herein, Plaintiff has not made any demand on the

Novavax Board to institute this action against the Individual Defendants. Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

83.     At the time this action was commenced, the Board consisted of nine directors: Defendants Erck, Young, Alton, Douglas, King, McGlynn, McManus, Modi, and Mott. All nine members of the Board are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

**DEMAND IS FUTILE AS TO DEFENDANTS ERCK, YOUNG, ALTON, DOUGLAS, KING, MCGLYNN, MCMANUS, MODI, AND MOTT BECAUSE THEY EACH FACE A SUBSTANTIAL LIKELIHOOD OF <u>LIABILITY</u>**

84.     Defendants Erck, Young, Alton, Douglas, King, McGlynn, McManus, Modi, and Mott all face a substantial likelihood of liability for their individual misconduct. Defendants Erck, Young, Alton, Douglas, King, McGlynn, McManus, Modi, and Mott were directors during the time of the false and misleading statements, and as such had a fiduciary duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations on behalf of the Company concerning its business, operations, prospects, internal controls, and financial statements were accurate.

85.     Moreover, Defendants Erck, Young, Alton, Douglas, King, McGlynn, McManus, Modi, and Mott, as directors owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company was acting legally and its internal controls were sufficiently robust and effective (and were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, they reviewed, authorized and/or caused the publication of the materially false and misleading statements discussed above that caused the

Company's stock to trade at artificially inflated prices.

86.     Defendants Erck, Young, Alton, Douglas, King, McGlynn, McManus, Modi, and Mott knowingly and consciously allowing the authorization of false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and were being implemented effectively), failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence constitute breaches of the fiduciary duties of loyalty and good faith, for which the Defendants Erck, Young, Alton, Douglas, King, McGlynn, McManus, Modi, and Mott face a substantial likelihood of liability. If Defendants Erck, Young, Alton, Douglas, King, McGlynn, McManus, Modi, and Mott were to bring a suit on behalf of Novavax to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability. This is something they will not do. For this reason, demand is futile as to Defendants Erck, Young, Alton, Douglas, King, McGlynn, McManus, Modi, and Mott.

## DEFENDANT MOTT IS NOT DISINTERESTED

87.     As noted above, Defendant Mott personally benefited from the Individual Defendants false and misleading statements by having the opportunity to sell shares of Novavax stock at artificially inflated prices, a benefit not shared by the rest of Novavax stockholders.

## DEFENDANT ERCK IS NEITHER INDEPENDENT NOR DISINTERESTED

88.     As Novavax admits in its SEC filings, including the Company's annual proxy statement filed with the SEC on May 3, 2021 ("2021 Proxy"), Defendant Erck, the Company's President and CEO, is not an independent director. Defendant Erck is not disinterested for purposes of demand futility because his principal occupation is President and CEO of Novavax. For

compensation in this position, he received $48,086,018 and $2,438,562 for years 2020 and 2019, respectively. These amounts are material to Defendant Erck.

89.     Defendant Erck is also incapable of considering a demand to commence and vigorously prosecute this action because he faces additional substantial likelihood of liability as he is a named defendant in the Securities Class Action.

## DEMAND IS EXCUSED AS TO DEFENDANTS ALTON, DOUGLAS, AND MCMANUS BECAUSE AS MEMBERS OF THE AUDIT COMMITTEE THEY FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY

90.     Defendants Alton, Douglas, and McManus members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements and allowing the Company to repeatedly make other false and misleading statements to the investing public. More specifically, as members of the Audit Committee, Defendants Alton, Douglas, and McManus were obligated to review the Company's annual and quarterly reports to ensure their accuracy. Instead, Defendants Alton, Douglas, and McManus as members of the Audit Committee, failed to ensure the integrity of the Company's financial statements and financial reporting process, the Company's systems of internal accounting and financial controls and other financial information provided by the Company, as required by the Audit Committee Charter. For this reason, demand is futile as to Defendants Alton (Chair), Douglas, and McManus.

## DEFENDANT MODI IS NOT INDEPENDENT

91.     Defendant Modi lacks independence because of his personal entwinement with the Company. Specifically, Defendant Modi is the managing director of Cadila Pharmaceuticals, Ltd. ("Cadila"). Novavax and Cadila have formed a joint venture called CPL Biologicals Private Limited, of which Novavax owns 20% and Cadila owns the remaining 80%. As of April 19, 2021, a subsidiary of Cadila owns 125,000 shares of Novavax's outstanding Common Stock.

92.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

93.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

94.     The Individual Defendants owed and owe Novavax fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Novavax the highest obligation of good faith, fair dealing, loyalty and due care.

95.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

96.     The Individual Defendants had actual or constructive knowledge regarding the problems associated with NVX-CoV2373 alleged herein and also knowingly made false and misleading statements regarding the Company's business operations, practices, and internal controls in connection therewith, as alleged herein. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

97.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Novavax has sustained significant and actual damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

98.     Plaintiff, on behalf of Novavax, has no adequate remedy at law.

## COUNT II
### AGAINST DEFENDANT MOTT FOR INSIDER SELLING AND MISAPPROPRIATION OF INFORMATION

99.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

100.     At the time of his stock sales set forth herein, defendant Mott knew of the

33

information described above, and sold Novavax common stock on the basis of such information.

101.    The information described above was proprietary non-public information concerning the Company. It was a proprietary asset belonging to the Company, which Mott used for his own benefit when he sold Novavax common stock.

102.    Defendant Mott's sales of Company common stock while in possession and control of this material adverse non-public information was a breach of his fiduciary duties of loyalty and good faith.

103.    Since the use of the Company's proprietary information for their own gain constitutes a breach of defendant Mott's fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits defendant Mott obtained thereby.

<u>COUNT III</u>
AGAINST DEFENDANT MOTT FOR UNJUST ENRICHMENT

104.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

105.    Defendant Mott was unjustly enriched by his receipt of proceeds from his illegal sales of Novavax common stock, as alleged herein, and it would be unconscionable to allow him to retain the benefits of his illegal conduct.

106.    To remedy Defendants Mott's unjust enrichment, the Court should order him to disgorge to the Company all proceeds derived from his illegal sales of Novavax common stock.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Novavax and that Plaintiff is a proper and adequate representative of the Company;

B.      Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and other violations of law;

C.      Ordering defendant Mott to disgorge the profits obtained as a result of his sale of Novavax stock while in possession of insider information as described herein;

D.      Granting appropriate equitable relief to remedy Individual Defendants' breaches of fiduciary duties and other violations of law;

E.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees and costs and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 22, 2021                       Respectfully submitted,


                                               /S/  Thomas J. Minton
                                               Thomas J. Minton  - No. 03370
                                               Goldman & Minton, P.C.
                                               3600 Clipper Mill Rd., Suite 201
                                               Baltimore, MD 21211
                                               PH (410) 783-7575
                                               FAX (410) 783-1711
                                               tminton@charmcitylegal.com


                                               **HYNES & HERNANDEZ, LLC**
                                               Michael J. Hynes
                                               Ligaya T. Hernandez
                                               101 Lindenwood Drive, Suite 225
                                               Malvern, PA 19355
                                               Telephone: (484) 875-3116

**LAW OFFICE OF DEBRA S. GOODMAN P.C.**
Debra S. Goodman
1301 Skippack Pike, Suite7A#133
Blue Bell, PA 19422
Telephone: (610) 277 -6057

*Counsel for Plaintiff*