# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE NOVAVAX INC. STOCKHOLDER DERIVATIVE LITIGATION | Master File No.: 8:21-cv-02996-TDC |
| This Document Relates To: ALL ACTIONS | (Consolidated with: No. 8:22-cv-01415-TDC and No. 1:22-cv-01417-TDC) |

**STIPULATION AND AGREEMENT**
**OF COMPROMISE, SETTLEMENT, AND RELEASE**

This Stipulation of Compromise, Settlement, and Release (the "Stipulation") is made and entered into as of November 22, 2024, by and among: (i) the Special Litigation Committee of the Board of Directors of Novavax Inc. (the "Special Litigation Committee" or "SLC"); (ii) Amy Snyder, Charles R. Blackburn, Michele Rosati, Robert Meyer, as beneficiary of the Robert E. Meyer (IRA), and Shui Shing Yung (collectively, "Plaintiffs"); (iii) nominal defendant Novavax Inc. ("Novavax" or "the Company"), a Delaware corporation; (iv) Defendants Stanley C. Erck, John J. Trizzino, Gregory M. Glenn, John A. Herrmann III, David M. Mott, Michael A. McManus, and James F. Young (collectively, the "Defendants").

The above-referenced parties to this Stipulation (the "Settling Parties"), by and through their undersigned attorneys, have reached an agreement for the

settlement of claims asserted or that could have been asserted in connection with the facts and circumstances alleged in the above-captioned matter styled *In re Novavax Inc. Stockholder Derivative Litigation*, filed in the United States District Court for the District of Maryland (the "Court"), Case No. 8:21-cv-02996-TDC (the "Action") on the terms set forth below (the "Settlement"), and subject to Court approval pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, as between the Plaintiffs, Novavax, the SLC, and the Defendants. This Stipulation is intended to fully, finally, and forever compromise, resolve, discharge, and settle all Released Claims (defined below), and to result in the dismissal of the Action with prejudice as against the Released Persons (defined below).

**WHEREAS**,

**<u>Summary of the Action and Investigation</u>**

A. Novavax is a biotechnology company incorporated in Delaware and headquartered in Maryland. It develops vaccines to prevent infectious diseases. In the summer of 2020, Novavax was selected to participate in Operation Warp Speed, the federal government's program to develop and deliver a COVID-19 vaccine. The allegations and claims at issue in this Action are focused on Novavax's development of a COVID-19 vaccine in 2020 and 2021.

B. On November 22, 2021, a derivative action captioned *Meyer v. Erck*, Case No. 8:21-cv-02996 was filed in this Court by a putative Novavax stockholder.

On December 12, 2021, a derivative action captioned *Yung v. Erck*, Case No. 8:21-cv-03248 was filed in this Court by another putative Novavax stockholder. On June 10, 2022, two derivative actions captioned *Blackburn v. Erck*, Case No. 1:22-cv-01417 and *Snyder v. Erck*, Case No. 8:22-cv-01415 were filed in this Court by two additional putative Novavax stockholders. On October 6, 2022, the Court consolidated the aforementioned actions into this Action and designated Levi & Korsinsky LLP, Robbins LLP, and Glancy Prongay & Murray LLP as co-lead counsel for Plaintiffs ("Plaintiffs' Co-Lead Counsel").

C. On November 21, 2022, Plaintiffs filed the Verified Third Amended Consolidated Stockholder Derivative Complaint (the "Complaint"), ECF Nos. 49, 52, which incorporated books and records obtained from the Company pursuant to 8 *Del. C.* § 220. The Complaint remains the operative complaint in the Action. The Complaint asserted four claims: (1) violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), for knowingly making false statements and material omissions in the Company's November 2021 Proxy Statement ("Count I"); (2) breach of fiduciary duty by the Company's Board of Directors (the "Board") for inadequate oversight of the Company's COVID-19 vaccine development process ("Count II"); (3) breach of fiduciary duty arising from stock sales by certain defendants allegedly made based on material nonpublic information related to alleged challenges and setbacks the Company faced with respect to its application

for Emergency Use Authorization of its COVID-19 vaccine candidate in the United States ("Count III"); and (4) unjust enrichment arising from the challenged stock sales ("Count IV"). Among other things, Plaintiffs sought damages and equitable relief.

D. On February 10, 2023, the defendants moved to dismiss all claims asserted in the Complaint (the "Motion to Dismiss") for failure to plead demand futility under Rule 23.1 of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 60, 61. By a Memorandum Opinion and Order dated August 21, 2023, the Court granted in part and denied in part the Motion to Dismiss. ECF Nos. 80, 81. The Court dismissed Counts I and II for failure to plead demand futility. It also dismissed the claims against Gary C. Evans in Counts III and IV for failure to state a claim. As a result, the surviving claims in the Action were Counts III and IV (the "Surviving Claims") against the Defendants (as defined above).

E. Separately, certain stockholders of the Company filed derivative actions in the Delaware Court of Chancery and in the Circuit Court for Montgomery County, Maryland (the "Related Actions") asserting substantially similar claims to the Surviving Claims (collectively with the Surviving Claims, the "Stock Sale Claims") and the claims raised in the Litigation Demands (defined below). The Related Actions were captioned *Kirst v. Erck, et al.*, No. C-15-CV-21-000618 (Md.

Circuit Court), *Needelman v. Erck, et al.*, No. C-15-CV-23-001550 (Md. Circuit Court), *Mesa v. Erck, et al.*, No. 2022-0770-NAC (Del. Ch.), and *Acosta v. Erck, et al.*, No. 2022-1133-NAC (Del. Ch.). The Board also received two stockholder litigation demands (the "Litigation Demands") alleging breaches of fiduciary duty by certain directors and officers of the Company for engaging in insider trading, making false or misleading statements related to the Company's development of its COVID-19 vaccine, and failing to exercise adequate oversight over the Company's development of its COVID-19 vaccine.

F. On October 6, 2023, the Board established the SLC consisting of independent directors Rachel King and Margaret McGlynn. The SLC was authorized, among other things, to investigate the Stock Sale Claims and the claims and allegations asserted in the Litigation Demands to determine an appropriate course of action with respect thereto, with all such determinations deemed final and binding upon the Company and not subject to review or approval by the full Board. The SLC engaged its own independent counsel, Wilson Sonsini Goodrich & Rosati, P.C., to assist with its investigation.

G. On November 6, 2023, the parties stipulated to stay the Action pending the SLC's investigation, which was granted by Court Order on November 7, 2023. ECF Nos. 94, 95. The Action was stayed for six months, which period was later extended. ECF No. 98. The other related state court derivative actions were likewise

stayed in light of the stay pending the SLC's investigation in this Action.

H. Between October 2023 and May 2024, the SLC conducted a thorough, independent investigation of the relevant claims and issues. The SLC reviewed, with its counsel, the underlying factual and legal merits of each theory of liability advanced in the Action and the Litigation Demands,, as well as potential theories of liability not advanced in the Action or the Litigation Demands; reviewed over 50,000 documents collected from 19 custodians; conducted 18 total interviews of the critical witnesses involved in the relevant events, including all Defendants, several current and former non-party employees and directors of the Company, and certain third-party advisors; and had multiple meetings with Plaintiffs' Co-Lead Counsel, Defendants' counsel, and Company counsel. Among other things, Defendants' counsel conducted its own investigation and made multiple presentations to the SLC regarding Defendants' potential defenses against the claims asserted and potential calculations of damages related to the alleged liability. The SLC met regularly during the investigation and, with assistance of counsel, worked toward completing its investigation by May 2024.

I. As part of the SLC's independent investigation, on March 8, 2024, counsel to Plaintiffs sent the SLC's counsel a letter contending that Defendants Erck, Glenn, Herrmann, Mott, and Trizzino violated the Company's Insider Trading Policy by entering into 10b5-1 sales plans while in possession of material, non-

public information concerning the Company's business, and that they compounded their misconduct by selling over $65 million in Company stock at inflated prices while in possession of such information.

J. On March 11, 2024, Plaintiffs and their counsel met with the SLC and its counsel in person to discuss the letter and communicate their belief that the SLC should prosecute claims against the individual defendants on behalf of the Company or alternatively allow Plaintiffs' counsel to continue prosecuting the claims alleged in the Action.

K. On March 12, 2024, Plaintiffs' counsel sent the SLC's counsel an email regarding the relationship between a claim for breach of fiduciary duty predicated on insider trading and the fiduciary duty of disclosure.

L. Following the investigation, the SLC concluded that it would be in the best interests of Novavax for the SLC to engage in discussions with Defendants in an attempt to negotiate a reasonable settlement. The SLC also engaged in discussions with Plaintiffs' Co-Lead Counsel throughout settlement discussions. On June 6, 2024, the parties filed a stipulation extending the stay until August 5, 2024 to allow the SLC to discuss its findings with the parties and explore next steps, which was granted by Court Order. ECF No. 101.

M. Subsequently, the parties engaged Andre G. Bouchard, former Chancellor of the Delaware Court of Chancery, to conduct mediation in aid of

settlement. An initial mediation session, attended by counsel for the Settling Parties and presided over by former Chancellor Bouchard, was held on July 31, 2024. Thereafter, the parties stipulated to further extend the stay of the Action until November 4, 2024 to continue their mediation efforts, which was granted by Court Order. ECF No. 103. Plaintiff's Counsel attended the mediation and was an active participant in the mediation session.

N. Following a second mediation session held on September 16, 2024 and extensive settlement discussions thereafter, the Settling Parties agreed to the Settlement, pursuant to which (i) defendants Stanley C. Erck and John A. Herrmann III will pay, or cause to be paid on their behalf, the Settlement Amount in consideration for the Releases described herein, (ii) all Released Claims will be released as to defendants John Trizzino, Gregory Glenn, David Mott, Michael McManus, and James Young, but no portion of the Settlement Amount will be paid by them or on their behalf, and (iii) the Company will implement corporate governance reforms substantially in the form attached hereto as Exhibit A (the "Governance Reforms"). Plaintiff's Counsel participated in the second mediation and was an active participant in the mediation session, including the settlement discussions that occurred thereafter.

**<u>Plaintiffs' Claims and the Benefits of the Settlement</u>**

O. Based on its investigation into the claims asserted in the Action and

potential additional claims arising from the same operative facts, the SLC, on behalf of Novavax, has concluded that the Settlement is in the best interests of Novavax and that the Settlement confers substantial benefits upon Novavax and Current Novavax Stockholders, and that the interests of Novavax and Current Novavax Stockholders would best be served by settlement of the Action and related claims on the terms and conditions set forth herein.

P. Plaintiffs believe that the claims asserted in the Action have merit, but also believe that the Settlement set forth below provides substantial and immediate benefits for Novavax and Current Novavax Stockholders. In addition to these substantial benefits, Plaintiffs and Plaintiffs' Counsel have considered: (i) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (ii) the work undertaken by the SLC and its conclusion that the Action should be resolved; (iii) the probability of success on the merits; (iv) the inherent problems of proof associated with, and possible defenses to, the claims asserted in the Action; (v) the desirability of permitting the Settlement to be consummated according to its terms; (vi) the expense and length of continued proceedings necessary to prosecute the Action against the Defendants through trial and appeals; and (viii) the conclusion of Plaintiffs and Plaintiffs' Counsel that the terms and conditions of the Settlement are fair, reasonable, and adequate, and that it is in the best interests of Novavax and Current Novavax Stockholders to settle the Action on

the terms set forth herein.

**The Settling Parties' Denials of Wrongdoing and Liability**

Q. Defendants deny any and all allegations of wrongdoing, liability, violations of law, or damages arising out of or related to any of the conduct, statements, acts, or omissions alleged in the Action, and maintain that their conduct was at all times proper, in the best interests of Novavax and its stockholders, and in compliance with applicable law. They further deny any breach of fiduciary duties. The Defendants also deny that Novavax or its stockholders were harmed by any conduct or lack thereof of the Defendants alleged in the Action or that could have been alleged therein. Each of the Defendants asserts that, at all relevant times, he acted in good faith and in a manner he reasonably believed to be in the best interests of Novavax and all of its stockholders.

R. Nevertheless, Defendants wish to eliminate the uncertainty, distraction, risk, burden, and expense of further litigation, and to permit the operation of Novavax without further distraction and diversion of its Board and personnel with respect to the Action. The Defendants have therefore determined to settle the Action on the terms and conditions set forth in this Stipulation solely to put the Released Claims (as defined below) to rest, finally and forever, without in any way acknowledging any wrongdoing, fault, liability, or damages.

S. Nothing in this Stipulation shall be construed as any admission by the

Defendants of any wrongdoing, fault, liability, or damages whatsoever. This Stipulation is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action, any wrongdoing by the Defendants, or any damages or injury to Novavax or its stockholders. The SLC is joining in this Stipulation and supports the Settlement because it confers substantial benefits on Novavax and the SLC considers the terms of the Settlement to be fair to and in the best interests of Novavax and Current Novavax Stockholders.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among the Settling Parties subject to the approval of the Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, that the Action shall be fully and finally compromised and settled, the Released Claims shall be released as against the Released Persons, and the Action shall be dismissed with prejudice as against the Released Persons, upon and subject to the following terms and conditions of the Settlement:

## I. DEFINITIONS

1.1. "Current Novavax Stockholders" means any Person or Persons (as defined below) who are record or beneficial owners of Novavax common stock as of the close of business on the date of this Stipulation.

1.2. "Effective Date" means the first date by which each of the following conditions has been met: (i) Final Approval of Settlement (as defined below); and

(ii) the full Settlement Amount has been paid in accordance with the provisions of Paragraph 2.1 below.

1.3. "Final" means, with respect to any judgment or order, that (i) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal of the judgment or order; or (ii) if there is an appeal from the judgment or order, the date of (a) final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise to review the judgment or order, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review of the judgment or order, and, if certiorari or other form of review is granted, the date of final affirmance of the judgment or order following review pursuant to that grant. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to attorneys' fees or expenses shall not in any way delay or preclude the Judgment from becoming Final.

1.4. "Final Approval of Settlement" means that (i) the Court has entered the Judgment—with no material modification to the form of Judgment—approving the Settlement, dismissing Defendants from the Action with prejudice on the merits and without costs to any party (except any costs specifically identified in this Stipulation), and providing for the Releases set forth below; and (ii) such Judgment

is Final; ***provided, however***, and notwithstanding any provision to the contrary in this Stipulation, Final Approval of Settlement shall not include (and the Settlement is expressly not conditioned on) the award of attorneys' fees or the payment of expenses to counsel for any Person, including any appeal related to any such award.

1.5. "Judgment" means the Order and Final Judgment to be entered by the Court, substantially in the form annexed hereto as Exhibit D, dismissing the Released Claims with prejudice as against the Released Persons.

1.6. "Notice" means the Notice of Pendency and Proposed Settlement of Action, substantially in the form annexed hereto as Exhibit C.

1.7. "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, or any other business or legal entity.

1.8. "Plaintiffs' Counsel" means Plaintiffs' Co-Lead Counsel (i.e., Levi & Korsinsky LLP, Robbins LLP, and Glancy Prongay & Murray LLP), and any other legal counsel who, at the direction of any Plaintiff or under the supervision of Plaintiffs' Co-Lead Counsel, performed services in the Action.

1.9. "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses,

interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, direct or derivative, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including known claims and Unknown Claims (as defined below), whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule (including claims within the exclusive jurisdiction of the federal courts), that are, have been, could have been, could now be, or in the future could, can, or might be asserted, in the Action or in any other court, tribunal, or proceeding (a) by Plaintiffs or any other Current Novavax Stockholder directly or derivatively on behalf of Novavax, or by Novavax directly, against any of the Released Persons or (b) by the Released Persons against Novavax or any other Released Person, which, now or hereafter, are based upon, arise out of, or relate to any of the actions or inactions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims, or any other matters related to (i) the allegations, claims, and events described in the Complaint, including, for the avoidance of doubt, the claims that were dismissed in the Court's August 21, 2023 Memorandum Opinion and Order and the claims asserted in the Related Actions; (ii) the allegations, claims, and events

described in the Litigation Demands, and (iii) the Action and the institution, prosecution and settlement thereof, including the SLC's investigation; provided, however, "Released Claims" shall not include, and neither the Settlement Stipulation nor any aspect of the Settlement shall affect claims relating to enforcement of the Settlement, the Settlement Stipulation, or any other agreement among any or all of the Settling Parties and relevant insurers in connection with the Settlement.

1.10. "Released Persons" means Novavax, the Defendants, the members of the SLC, Plaintiffs, Plaintiffs' Counsel, and their respective past, present, or future heirs, trusts, trustees, estates, beneficiaries, distributees, agents, employees, fiduciaries, partners, subsidiaries, affiliates, associated entities, stockholders, principals, officers, directors, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, advisors, attorneys, personal or legal representatives, associates and insurers, co-insurers and re-insurers.

1.11. "Releases" means the releases set forth in Section II.B below.

1.12. "Scheduling Order" means an order scheduling a hearing on the Stipulation and approving the form of Notice and method of giving notice, substantially in the form annexed hereto as Exhibit B.

1.13. "Settlement Amount" means a total of six million seven hundred fifty thousand U.S. dollars in cash ($6,750,000.00).

1.14. "Settlement Hearing" means the hearing (or hearings) at which the Court will review and assess the adequacy, fairness, and reasonableness of the Settlement, and the appropriateness and amount of the award of attorneys' fees and expenses to be awarded by the Court (as set forth in Sections IV-V, below).

1.15. "Novavax's Counsel" means Ropes & Gray LLP.

1.16. "Unknown Claims" means any claims that Plaintiffs, any Released Person, Novavax, or any other Current Novavax Stockholder does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Claims against any of the Released Persons, including those which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement. With respect to any of the Released Claims, the Settling Parties stipulate and agree that upon Final Approval of the Settlement, they shall be deemed to have, and by operation of the Judgment shall have, expressly waived, relinquished, and released any and all provisions, rights, and benefits conferred by or under California Civil Code § 1542,[1] and any law of any state or territory of the United States, or

---

[1] California Civil Code § 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

principle of common law or foreign law, that is similar, comparable, or equivalent to California Civil Code § 1542. The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those now known or believed to be true by them, with respect to the subject matter of the Released Claims, but it is the intention of the Settling Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all Released Claims without regard to the subsequent discovery of additional or different facts. The Settling Parties acknowledge that the foregoing waiver was separately bargained for and is a key element of the Settlement, and was relied upon by each and all of the Settling Parties in entering into the Settlement.

## II. TERMS OF THE SETTLEMENT

### A. Settlement and the Settlement Consideration

2.1. In consideration for the full and final release, settlement, and discharge of any and all Released Claims against the Released Persons, and notwithstanding the existence of any timely filed objections to the Settlement, or any collateral attack on the Settlement or any part thereof, or any appeal or potential for appeal from the Settlement or the Judgment, within fifteen (15) business days after receipt of all the following: (i) a copy of the Court's entry of Judgment; (ii) payment instructions including an IRS W-9 form, bank name and address, account name and number, SWIFT Code, and any other payment information that may be reasonably requested

by the insurers; and (iii) verbal verification of payment instructions from an authorized representative of payee, whose contact information shall be provided to the insurers, defendants Stanley C. Erck and John A. Herrmann III shall pay, or cause their insurers to pay, the Settlement Amount to Novavax by wire transfer. For the avoidance of doubt, and notwithstanding that they are Released Persons under this Agreement, no payment of the Settlement Amount is to be made by or on behalf of defendants John Trizzino, Gregory Glenn, David Mott, Michael McManus, or James Young. Also as part of the settlement, Novavax will implement the Governance Reforms, as set forth in Exhibit A. The Company, the SLC, and the Individual Defendants acknowledge and agree that the Settlement Amount and the Governance Reforms confer substantial benefits on the Company and its stockholders.

**B. Releases**

2.2. Upon the Effective Date, Plaintiffs, the members of the SLC, the Company, any Current Novavax Stockholder, the Defendants, and all of their respective successors-in-interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, shall be deemed to have, and by operation of the Judgment approving this Settlement shall have, completely discharged, dismissed with prejudice on the merits, released and settled, to the fullest extent permitted by law, the Released Claims against the

Released Persons and shall be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any of the Released Claims against any of the Released Persons.

2.3. The Settlement shall eliminate all further risk and liability relating to the Released Claims, and the Settlement shall be a final and complete resolution of all disputes asserted or that could be or could have been asserted with respect to the Released Claims, including, without limitation, any claims for contribution in accordance with 10 *Del. C.* § 6304 and any similar laws or statutes. All such claims shall be enjoined from further prosecution.

2.4. Pursuant to 10 *Del. C.* § 6304(b) and any similar laws or statutes, damages recoverable for the Released Claims against any alleged tortfeasor who is not otherwise a party to the Settlement (whether or not a party to the Action) shall be reduced to the extent of the pro rata share, if any, of the Defendants for damages.

2.5. The members of the SLC and the Defendants shall each bear their own fees, costs, and expenses related to the Action and the Settlement, provided that nothing herein shall affect any claims that the members of the SLC, Novavax, or any Defendant may have against any of their respective insurers, co-insurers, or reinsurers, to the extent such claims are not otherwise released pursuant to other documentation. For the avoidance of doubt, this section is not intended to release and expressly does not release any claims by or among the SLC, Novavax, any

Defendant, and their respective insurers, co-insurers, or reinsurers related to indemnification or advancement of defense costs or the apportionment of the Settlement Amount among the various insurers.

## III. PROCEDURE FOR APPROVAL

3.1 As promptly as practical after execution of this Stipulation, the SLC shall move for preliminary approval of the Settlement, authorization to provide notice of the Settlement, and the scheduling of a date and time for the Settlement Hearing, which motion shall be unopposed by Plaintiffs, Defendants, and the Company. Concurrently with the motion for preliminary approval, the SLC shall apply for, and the Settling Parties shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit B.

3.2 Within ten (10) business days after the entry of the Preliminary Approval Order, Novavax shall mail, or cause to be mailed, by first class U.S. mail or other mail service if mailed outside the U.S., postage prepaid, the Notice, substantially in the form attached hereto as Exhibit C, to all Current Novavax Stockholders who are record holders of Novavax stock as of the date of this Stipulation. All record stockholders who are not also the beneficial owners of the shares of the Company's common stock held by them of record shall be requested to forward the Notice to the beneficial owners of those shares. The Company shall also use reasonable efforts to give notice to all beneficial owners by (i) making

additional copies of the Notice available to any record holder who, prior to the Settlement Hearing, requests the same for distribution to beneficial owners by physical mailing or by electronic means; and (ii) mailing or transmitting by electronic means additional copies of the Notice to beneficial owners as reasonably requested by record holders who provide names and addresses for such beneficial holders.

3.3 Within ten (10) business days after the entry of the Preliminary Approval Order, Novavax shall cause copies of the Notice and this Stipulation to be posted on Novavax's website, which documents shall remain posted on that website through the Effective Date of the Settlement.

3.4 The Company shall announce the Settlement in its next Quarterly Report on Form 10-Q following the entry of the Preliminary Approval Order, and shall include a statement as to where stockholders can locate the Notice and Stipulation (or shall append the Notice and Stipulation as an exhibit).

3.5 Novavax shall be responsible for all costs and expenses related to providing notice of the proposed Settlement ("Notice Costs") regardless of whether the Court declines to approve the Settlement or the Effective Date otherwise fails to occur. In no event shall Plaintiffs, any other Novavax stockholder, the Defendants,

or any of their attorneys (including Plaintiffs' Counsel) be responsible for any Notice Costs.

3.6 The Settling Parties submit that the proposed content and manner of notice constitutes adequate and reasonable notice to Current Novavax Stockholders pursuant to applicable law and due process.

3.7 The SLC shall move for final approval of the Settlement. On or before the deadline for submissions in support of final approval of the Settlement, Plaintiff shall submit papers in support of final approval of the settlement and in support of any Fee and Expense Award (defined below). On or before the deadline for submissions in support of final approval of the Settlement, the SLC may also, but is under no obligation to, submit additional papers in support of the final approval of the Settlement. No later than ten (10) business days before the Settlement Hearing, Novavax's Counsel shall serve on counsel in the Action and file with the Court an appropriate affidavit with respect to the preparation and mailing of the Notice and posting of the Notice and Stipulation.

3.8 The Settling Parties and their attorneys agree to use their individual and collective best efforts and to cooperate with one another to obtain Court approval of the Settlement. The Settling Parties and their attorneys further agree to use their individual and collective best efforts to effect, take, or cause to be taken all actions, and to do, or cause to be done, all things reasonably necessary, proper, or advisable

under applicable laws, regulations, and agreements to consummate and make effective, as promptly as practicable, the Settlement provided for hereunder and the dismissal of the Action as to the Released Persons with prejudice.

3.9 If the Settlement embodied in this Stipulation is approved by the Court, the Settling Parties shall request that the Court enter the Judgment, substantially in the form attached hereto as Exhibit D.

## IV. ATTORNEYS' FEES AND EXPENSES

4.1. Novavax, the Defendants, and the members of the SLC acknowledge and agree that (i) the Action and the efforts of Plaintiffs' Counsel were substantial factors in securing the Settlement Amount and the Governance Reforms; (ii) the agreement on the Settlement Amount and the Governance Reforms was a direct result of the Action; and (iii) the Settlement Amount and the Governance Reforms confer substantial benefits on the Company and its stockholders.

4.2. In recognition thereof, Novavax, the Defendants, and the members of the SLC agree that Plaintiffs' Counsel are entitled to attorneys' fees and expenses, subject to ultimate Court approval.

4.3. Plaintiffs' Counsel intend to petition the Court for an all-in award of attorneys' fees and litigation expenses to Plaintiffs' Counsel (the "Fee and Expense Award"), to be paid from (and out of) the Settlement Amount.

4.4. Plaintiffs' Counsel will apply for a Fee and Expense Award. To the extent the Court grants any such Plaintiffs' Fee and Expense Award, the Fee and Expense Award shall be paid to Plaintiffs' Counsel, notwithstanding the existence of any timely filed objections to the Fee and Expense Award or any appeal or potential for appeal therefrom, or any collateral attack on the Settlement or any part thereof or any appeal or potential appeal from the Settlement or the Judgment, within ten (10) business days after both of the following events have occurred: (i) Novavax receives payment of the Settlement Amount pursuant to Section 2.1 above, and (ii) Plaintiffs' Counsel provides to Novavax and Novavax's Counsel wire payment instructions, bank information on bank letterhead, and an IRS Form W-9. Novavax shall be solely responsible for its payment from the Settlement Amount, and the Settling Parties agree that no other person or entity shall have any responsibility to contribute to or pay the Fee and Expense Award.

4.5. If, after payment of any Fee and Expense Award, the Fee and Expense Award is reversed or reduced and such order reducing or reversing the award has become Final, or the Settlement is terminated in accordance with the terms of this Stipulation, Plaintiffs' Counsel shall, within ten (10) business days of any order from a court of appropriate jurisdiction terminating the Settlement or reducing the Fee and Expense Award, return to Novavax the difference between the Fee and Expense Award paid to Plaintiffs' Counsel, on the one hand, and any attorneys' fees and

expenses ultimately and finally awarded on appeal, further proceedings on remand, or otherwise on the other hand.

4.6. The Fee and Expense Award shall be the sole compensation for Plaintiffs' Counsel in connection with the Action and the Settlement. The Defendants and the Released Persons shall have no responsibility or liability whatsoever with respect to the allocation of the Fee and Expense Award to or among Plaintiffs' Counsel or any other counsel to any stockholder or plaintiff in another action with whom Plaintiffs' Counsel has agreed to allocate a portion of the Fee and Expense Award.

4.7. The Defendants shall not be liable for or obligated to pay any fees, expenses, costs, or disbursements, or to incur any expense on behalf of, any person or entity (including, without limitation, Plaintiffs or Plaintiffs' Counsel), directly or indirectly, in connection with the Action or the Settlement, except as expressly provided for in this Stipulation.

4.8. This Stipulation, the Settlement, the Judgment, and whether the Judgment becomes Final, are not conditioned upon the approval of an award of attorneys' fees, costs, or expenses, either at all or in any particular amount, by the Court. Plaintiffs' Counsel warrants that no portion of any such award of attorneys' fees or expenses shall be paid to Plaintiffs, except as may be approved by the Court.

4.9. The Settling Parties further stipulate that Plaintiffs' Counsel may apply to the Court for a service award for each of the Plaintiffs, only to be paid upon Court approval, and to be paid from the Fee and Expense Amount in recognition of Plaintiffs' participation and efforts in the prosecution of the Action. The failure of the Court to approve any requested service award, in whole or in part, shall have no effect on the Settlement. Neither the Company nor any of the Defendants shall be liable for any portion of any service award. Not every Plaintiff will be entitled to the same monetary award.

## V. STAY PENDING COURT APPROVAL

5.1. Pending Court approval of the Stipulation, the Settling Parties agree to stay any and all proceedings in the Action other than those incident to the Settlement.

5.2. Except as necessary to pursue the Settlement and determine Plaintiffs' Fee and Expense Award (if any), until the earlier of the Effective Date or an order of the Court substantially denying or declining to approve the Settlement in accordance with the Stipulation, the Settling Parties agree not to institute, commence, prosecute, continue, or in any way participate in, whether directly or indirectly, representatively, individually, derivatively on behalf of Novavax, or in any other capacity, any action or other proceeding asserting any Released Claims.

5.3. Notwithstanding Paragraphs 5.1 and 5.2, nothing herein shall in any way impair or restrict the rights of any Settling Party to defend this Stipulation or to

otherwise respond in the event any Person objects to the Stipulation, the proposed Judgment to be entered, and/or Plaintiffs' fee and expense application.

## VI. EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

6.1. Plaintiffs, the SLC, Novavax, and the Defendants (provided, with respect to Defendants, that Defendants unanimously agree amongst themselves) shall each have the right to terminate the Settlement and this Stipulation solely by providing written notice of their election to do so ("Termination Notice") to the other Settling Parties within thirty (30) calendar days of: (i) the Court's declining to enter the Scheduling Order in any material respect; (ii) the Court's refusal to approve this Stipulation or any part of it that materially affects any Settling Party's rights or obligations hereunder; (iii) the Court's declining to enter the Judgment in any material respect; or (iv) the date upon which the Judgment is modified or reversed in any material respect by an appellate court. Neither a modification nor a reversal on appeal of the amount of fees, costs, and expenses awarded by the Court to Plaintiffs' Counsel shall be deemed a material modification of the Judgment or this Stipulation.

6.2. In the event that the Settlement is terminated pursuant to the terms of Paragraph 6.1 of this Stipulation or the Effective Date otherwise fails to occur for any other reason, then (i) the Settlement and this Stipulation (other than this Section VI and Paragraph 3.5 above) shall be canceled and terminated; (ii) any judgment

entered in the Action and any related orders entered by the Court shall in all events be treated as vacated, *nunc pro tunc*; (iii) the Releases provided under the Settlement shall be null and void; (iv) to the extent the Settlement Amount has been paid, it shall be repaid by Novavax to the persons and entities (including the insurers) who paid on behalf of any Defendants within five (5) business days after termination of the Settlement; (v) the fact of the Settlement shall not be admissible in any proceeding before any court or tribunal; (vi) all proceedings in the Action shall revert to their status as of immediately prior to the filing of this Stipulation, and no materials created by or received from another party that were used in, obtained during, or related to settlement discussions shall be admissible for any purpose in any court or tribunal, or used, absent consent from the disclosing party, for any other purpose or in any other capacity, except to the extent that such materials are otherwise required to be produced during discovery in any other litigation; (vii) the Settling Parties shall jointly petition the Court for a revised schedule for further proceedings; and (viii) the Settling Parties shall proceed in all respects as if the Settlement and this Stipulation (other than this Section VI and Paragraph 3.5 above) had not been entered into by the Settling Parties.

## VII. NO ADMISSION OF LIABILITY

7.1. It is expressly understood and agreed that neither the Settlement nor any act or omission in connection therewith is intended or shall be deemed or argued

to be evidence of or to constitute an admission or concession by: (a) the Defendants as to (i) the truth of any fact alleged by Plaintiffs, (ii) the validity of any claims or other issues raised, or which might be or might have been raised, in the Action or in any other litigation, (iii) the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or (iv) any wrongdoing, fault, or liability of any kind by any of them, which each of them expressly denies; or (b) Plaintiffs that any of their claims are without merit, that any of the Defendants or Released Persons had meritorious defenses, or that damages or other relief recoverable in the Action would not have exceeded the terms of the Settlement. The Settling Parties or any Released Persons may file this Stipulation and/or Judgment in any action that has been or may be brought against them in order to support a claim or defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim or in connection with any insurance litigation.

## VIII. MISCELLANEOUS PROVISIONS

8.1. Defendants Stanley C. Erck and John A. Herrmann III warrant that, as to the payments made or to be made on behalf of them, at the time of entering into this Stipulation and at the time of such payment they, or to the best of their knowledge any persons or entities contributing to the payment of the Settlement

Amount, were not insolvent, nor will the payment required to be made by or on behalf of them render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof. This representation is made by each of Messrs. Erck and Herrmann and not by their counsel.

8.2. This Stipulation shall be deemed to have been mutually prepared by the Settling Parties and shall not be construed against any of them by reason of authorship.

8.3. The Settling Parties agree that in the event of any breach of this Stipulation, all of the Settling Parties' rights and remedies at law, equity, or otherwise, are expressly reserved.

8.4. The Settling Parties agree there will be no public announcements regarding the specific terms of this Settlement until Novavax has announced or disclosed it or the Stipulation has been filed with the Court. To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of documents or information shall survive this Stipulation.

8.5. This Stipulation, its exhibits and any related agreement executed between Novavax, the SLC, the Defendants, and the relevant insurers, embody the entire agreement and understanding of the Settling Parties and supersede all prior

agreements and understandings, if any, in respect of the subject matter contained herein. No representations, warranties or statements of any nature whatsoever, whether written or oral, have been made to or relied upon by any Settling Party concerning the subject matter of this Stipulation, other than the representations, warranties and covenants expressly set forth in such documents.

8.6. This Stipulation may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same document. Any signature to the Stipulation by means of facsimile or electronic scanning shall be treated in all manner and respects as an original signature and shall be considered to have the same binding legal effect as if it were the original signed version thereof and without any necessity for delivery of the originally signed signature pages in order for this to constitute a binding agreement.

8.7. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

8.8. Each counsel or other person executing this Stipulation on behalf of any Settling Party warrants that he or she has the full authority to bind his or her principal to this Stipulation.

8.9. Plaintiffs represent and warrant that none of Plaintiffs' claims referred to in this Stipulation or that could have been alleged in the Action have been assigned, encumbered, or in any manner transferred in whole or in part.

8.10. This Stipulation shall not be modified or amended, nor shall any provision of this Stipulation be deemed waived, unless such modification, amendment, or waiver is in writing and executed by or on behalf of the Settling Party(ies) against whom such modification, amendment, or waiver is sought to be enforced.

8.11. Any failure by any Settling Party to insist upon the strict performance by any other Settling Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by such other Settling Party. Waiver by any Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation, and failure by any Settling Party to assert any claim for breach of this Stipulation shall not be deemed to be a waiver as to that or any other breach and will not preclude any Settling Party from seeking to remedy a breach and enforce the terms of this Stipulation. Each of the Settling Parties' respective obligations hereunder are several and not joint, and the breach or default by one Settling Party shall not be imputed to, nor shall any Settling Party have any liability or responsibility for, the obligations of any other Settling Party herein.

8.12. This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto.

8.13. Notwithstanding the entry of the Judgment, the Court shall retain jurisdiction with respect to the implementation, enforcement, and interpretation of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for all matters relating to the administration, enforcement, and consummation of the Settlement and the implementation, enforcement, and interpretation of the Stipulation, including, without limitation, any matters relating to awards of attorneys' fees and expenses to Plaintiffs' Counsel. Each Settling Party (i) consents to personal jurisdiction in any such action (but no other action) brought in the Court; (ii) consents to service of process by registered mail upon such Settling Party or such Settling Party's agent; and (iii) waives any objection to venue in the Court and any claim that the Court is an inconvenient forum.

8.14. The construction and interpretation of this Stipulation shall be governed by and construed in accordance with the laws of the State of Delaware and without regard to the laws that might otherwise govern under principles of conflicts of law applicable hereto.

8.15. Without further order of the Court, the Settling Parties hereto may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

8.16. The following exhibits are annexed hereto and incorporated herein by reference:

(a) Exhibit A: Corporate Governance Reforms;

(b) Exhibit B: Scheduling Order With Respect to Notice and Settlement Hearing;

(c) Exhibit C: Notice of Pendency and Proposed Settlement of Action; and

(d) Exhibit D: Final Order and Judgment.

**IN WITNESS WHEREOF, IT IS HEREBY AGREED** by the undersigned as of the date noted above.

[SIGNATURE PAGES FOLLOW]

By: */s/ C. Thomas Brown*
C. Thomas Brown (admitted *pro hac vice*)
Peter L. Welsh (admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
E-mail:
Thomas.Brown@ropesgray.com
Peter.Welsh@ropesgray.com
(signed by Franklin M. Rubinstein with permission of C. Thomas Brown)

Edward R. McNichols (Bar No. 24833)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 508-4779
E-mail:
Edward.McNicholas@ropesgray.com

Stefan P. Schropp (Bar No. 21699)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9938
E-mail:
Stefan.Schropp@ropesgray.com

*Counsel for Nominal Defendant Novavax, Inc.*

By: */s/ Benjamin D. Schuman*
Benjamin D. Schuman (Bar No. 28829)
**DLA PIPER LLP**
650 S. Exeter St.
Suite 1100
Baltimore, Maryland 21202
Telephone: (410) 580-4022
E-mail: ben.schuman@us.dlapiper.com
(signed by Franklin M. Rubinstein with permission of Benjamin D. Schuman)

John L. Reed (motion for admission *pro hac vice* forthcoming)
**DLA PIPER LLP**
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
E-mail: john.reed@us.dlapiper.com

*Counsel for Individual Defendants Stanley C. Erck, Gregory M. Glenn, John A. Herrmann III, Michael A. McManus, David Mott, John J. Trizzino, and James F. Young*

By: /s/ Franklin M. Rubinstein
Franklin M. Rubinstein (Bar No. 15367)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1700 K Street NW, Fifth Floor
Washington, DC 20006
(202) 973-8800
E-mail: frubinstein@wsgr.com

Joseph R. Slights III (admitted *pro hac vice*)
Brad D. Sorrels (admitted *pro hac vice*)
Daniyal M. Iqbal (admitted *pro hac vice*)
Leah E. León (admitted *pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
E-mail: jslights@wsgr.com
bsorrels@wsgr.com
diqbal@wsgr.com
leah.leon@wsgr.com

*Counsel for the Special Litigation Committee of the Board of Directors of Nominal Defendant Novavax, Inc.*

By: */s/ Andrew Radding*
Andrew Radding, Bar No. 00195
**BROWN GOLDSTEIN & LEVY**
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202
Telephone: (410) 962-1030
Email: radding@browngold.com
(signed by Franklin M. Rubinstein with permission of Andrew Radding)

*Liaison Counsel for Plaintiffs*

Brian J. Robbins
Craig W. Smith
Shane P. Sanders (admitted *pro hac vice*)
**ROBBINS LLP**
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
E-mail: brobbins@robbinsllp.com
csmith@robbinsllp.com
ssanders@robbinsllp.com

Gregory M. Nespole (admitted *pro hac vice*)
Daniel Tepper (admitted *pro hac vice*)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 100004
Telephone: (212) 363-7500
E-mail: gnespole@zlk.com
dtepper@zlk.com
rmessina@zlk.com

Benjamin I. Sachs-Michaels
**GLANCY PRONGAY & MURRAY LLP**
745 Fifth Avenue
New York, NY 10151
Telephone: (212) 935-7400
E-mail:
bsachsmichaels@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

# EXHIBIT A

# CORPORATE GOVERNANCE ENHANCEMENTS

## I. REVISIONS TO INSIDER TRADING POLICY

A. The Company will adopt a revised Insider Trading Policy substantially similar to that set forth in the attached Annex 1. A redline reflecting changes as between the current policy and the to-be-adopted policy is attached hereto as Annex 2.

B. The Company will make its Insider Trading Policy available publicly on its website.

## II. DEVELOPMENT OF SKILLS MATRIX

A. The Company will develop a "Skills Matrix" for its incumbent directors.

## III. ENGAGEMENT OF INDEPENDENT CONSULTANT

A. The Nominating and Corporate Governance ("N&G") Committee of the Company's Board of Directors (the "Board") will, at its discretion, engage an independent consultant (the "Consultant") to identify director candidates in the event of vacancies. When its review is complete, the Consultant will provide a written report and oral presentation to the N&G Committee and the Board containing its findings and recommendations.

B. The Consultant, when initially engaged for the purpose set forth in Section III.A hereof, will review and evaluate the Company's director nomination processes, compare those processes with best practices, and assist the N&G Committee in developing recommendations to the Board regarding any actions to take based on its evaluation. When its review is complete, the Consultant will provide a written report and oral presentation to the N&G Committee and the Board containing its findings and recommendations.

## IV. AUDIT COMMITTEE RESPONSIBILITIES

A. The Company will clarify that the Audit Committee of the Company's Board will have the following responsibilities:

1. Overseeing the risk management policies of the Company's operations.

2. Overseeing and monitoring the operation of the Company's risk management framework.

3. Reviewing and monitoring the Company's internal risk assessments and internal reporting conducted by executives and other employees.

4. Identifying material risks relating to Novavax's compliance with all applicable laws and regulations.

5. Conducting an annual review of the effectiveness of Novavax's internal controls over the Company's compliance with laws and regulations and implementing changes to Novavax's policies and internal controls as necessary.

B. The Audit Committee's Charter will be amended to clarify that:

1. The Audit Committee shall receive quarterly reports, as necessary, from:

a) The Chief Compliance Officer ("CCO") concerning, among other things, any potential issues concerning the Company's risk management framework and/or policies; internal reporting, public disclosures, and necessary disclosures to the Company's vendors regarding any potentially material risks; compliance with all applicable laws and regulations, including all laws and regulations concerning public disclosures about the Company's business affairs; and the Company's contracts and relationships with government agencies and vendors, including the Company's ability to adequately perform under the contracts, and the risk of non-payment and/or fines associated with any inability to perform under the contracts; and

b) The Chief Safety Officer ("CSO") concerning, among other things, any potential issues regarding risks identified by the Company's epidemiology benefit/risk group.

2. The Audit Committee shall obtain input from management representatives as necessary to review the accuracy of public disclosures, including, with respect to: (i) the Company's internal controls; (ii) accounting policies; (iii) operations, enterprise risks and compliance matters that may have a material impact on the Company's operational performance, financial health, balance of risk, stability, and liquidity; and (iv) any other material matters required to be disclosed under state and federal securities laws and regulations.

3. In its oversight capacity, the Audit Committee shall have the responsibility for ensuring that the Company implements and maintains internal controls over accounting and financial reporting and reporting systems and procedures designed to identify instances of fraud and to ensure the integrity, accuracy, completeness, and timeliness of the Company's financial statements and related public filings and disclosures.

4. The Audit Committee shall periodically review executive stock sales in light of public statements by executives about the Company's business, in order to detect discrepancies that may indicate potential insider trading.

## V. RESEARCH & DEVELOPMENT ("R&D") COMMITTEE RESPONSIBILITIES

A. The Company will clarify that the R&D Committee will have the following responsibilities:

1. Evaluating existing, and considering additional, cross-functional training for personnel in all areas associated with research and development covering: (i) the proper conducting of test studies, including, without limitation, appropriate patient enrollment, adequate testing of vaccine safety, and adequate testing of vaccine efficacy; (ii) the proper and timely disclosure of any problems with patient enrollment or test studies; and (iii) the proper handling of data and results of test studies.

2. Assisting the Board with its oversight responsibilities regarding (i) the integrity and accuracy of the Company's regulatory filings with respect to clinical trials and studies, including regarding the Company's interactions with the Food & Drug Administration ("FDA") regarding such trials and studies; (ii) the Company's compliance with legal and regulatory requirements related to clinical research; and (iii) the effectiveness of the Company's processes and procedures to comply with such protocols.

3. Reviewing or receiving regular updates from management regarding the Company's ongoing relationships with regulators, including the FDA.

4. Receiving and reviewing all material correspondence to the Company from the FDA or from the FDA to the Company.

5. Reviewing or receiving regular updates form management regarding the manufacturing process and manufacturing facilities of the Company's vaccines.

6. Keeping the Audit Committee and the full Board apprised of the R&D Committee's activities, and directly advising the Board in detail of the R&D Committee's material findings on a periodic basis.

## VI. CCO RESPONSIBILITIES

A. The Company will clarify that its Chief Compliance officer ("CCO") will have the following duties:

1. Working with the Audit Committee to evaluate and define the goals of the Company's ethics and compliance program in light of trends and changes in laws which may affect the Company.

2. Reporting and presenting to the Audit Committee, annually, preliminary evaluations of new, potentially significant, or material compliance matters, including new and ongoing compliance risks, the effectiveness of the Company's compliance-related internal controls, and management's effectiveness in anticipating, addressing, and mitigating compliance risk, along with recommendations for improvements.

3. Working with the Company's Chief Legal Officer ("CLO") to evaluate the adequacy of the Company's internal controls over legal-regulatory compliance and developing proposals for improving these controls for the Board's consideration.

4. Overseeing employee training in risk assessment and compliance.

## VII. MANAGEMENT-LEVEL DISCLOSURE COMMITTEE

A. The Company will adopt a charter, approved by the Board, to govern the activities of the Management-Level Disclosure Committee with the charter attached hereto as Annex 3.

## VIII. BOARD REPORTING

A. To the extent the issues have not already been addressed with the Board, the CLO and CCO will continue to formally and timely update the full Board at each quarterly Board meeting regarding (i) any material compliance violations by the Company that are raised by the FDA or other regulatory agencies that fall under their respective purviews; (ii) any adverse developments in sponsored clinical trials, including significant new data or regulator comments on clinical trial design, efficacy, or safety data, in each case that would potentially change the timing or probability of regulatory approval of biologics under development in a significant manner; and (iii) any concerns or risks identified by the epidemiology benefit/risk group.

B. Upon the request of the CLO, CCO, or the independent members of the Board, the independent members of the Board will meet in executive session (i) with the CLO to review any concerns, including any whistle blower issues, reports of management wrongdoing, pending or threatened litigation, and such other matters that the CLO or independent board members identify, and/or (ii) with the CCO to review any concerns, including any material compliance issues raised by the FDA or other regulatory agencies, potential or actual issues concerning the status of ongoing or planned sponsored clinical trials or vaccine approvals, and the effectiveness of the Company's policies, procedures, systems, and controls designed to ensure regulatory compliance.

# ANNEX 1 TO EXHIBIT A

**Insider Trading Policy**

Effective Date: [[XXX]]

## I. Purpose

The board of directors of Novavax, Inc. (the "Company" or "Novavax") has adopted this Insider Trading Policy (the "Policy") for our directors, officers, employees and consultants with respect to the trading of the Company's securities and the handling of confidential information about the Company, as well as the securities of other publicly traded companies with whom we have a relationship. This Policy is publicly available on the Company's website.

Federal and state securities laws generally prohibit the purchase or sale of a company's securities by persons who are aware of material information about that company that is not generally known or available to the public. These laws also generally prohibit persons who are aware of such material nonpublic information from disclosing this information to others who may trade. Companies and their controlling persons are also subject to liability if they fail to take reasonable steps to prevent insider trading by company personnel.

It is important that you understand the breadth of activities that constitute illegal insider trading and the consequences, which can be severe. The U.S. Securities and Exchange Commission (the "SEC"), the NASDAQ stock market, the Financial Industry Regulatory Authority, as well as foreign regulatory authorities, investigate and are very effective at detecting insider trading. The SEC, together with the U.S. Attorneys, pursue insider trading vigorously. Cases have been successfully prosecuted against trading by employees at all levels whether through foreign accounts, trading by family members and friends or trading involving only a small number of shares.

This Policy is designed to prevent insider trading or allegations of insider trading, and to protect Novavax's reputation for integrity and ethical conduct. The Chief Legal Officer shall be responsible for administering this Policy (in such capacity, the "Plan Administrator"), and it is your obligation to understand and comply with it. Should you have any questions regarding this Policy, please contact the Company's Chief Legal Officer, at 240-268-2000.

## II. Penalties for Noncompliance

### A. Civil and Criminal Penalties

Potential penalties for insider trading violations include (1) imprisonment for up to 20 years, (2) criminal fines of up to $5 million and (3) civil fines of up to three times the profit gained, or loss avoided.

### B. Controlling Person Liability

If Novavax fails to take appropriate steps to prevent illegal insider trading, the Company may have "controlling person" liability for a trading violation, with civil penalties of up to the greater of $1 million and three times the profit gained or loss avoided, as well as a criminal penalty of up to $25 million. The civil penalties can extend personal liability to Novavax's directors, officers and other supervisory personnel if they fail to take appropriate steps to prevent insider trading.

novavax

### C. Company Sanctions

Failure to comply with this Policy may also subject you to Novavax-imposed sanctions, whether or not your failure to comply with this Policy results in violations of law, including dismissal for cause, disgorgement, cancellation of outstanding stock options, disqualification from performance-based compensation, and other disciplinary measures. The Audit Committee of the Novavax Board of Directors will administer sanctions for violations of this Policy, as appropriate.

### D. Reporting

Any complaint concerning actual or potential violations of this Policy should be submitted directly to the Plan Administrator. If a complaint concerns actual or potential violations of this Policy by the Plan Administrator, such complaint should be submitted directly to the Audit Committee. The Plan Administrator shall provide quarterly reports to the Audit Committee regarding any complaints concerning actual or potential violations of this Policy received by the Plan Administrator.

## III. Scope

### A. Persons Covered

As a director, officer, employee or consultant of Novavax or its subsidiary, this Policy applies to you. The restrictions set forth in this Policy, including those set forth in the Addendum, also apply to:

- your family members who reside with you;
- anyone else who lives in your household;
- any family members who do not live in your household but whose securities transactions are directed by you or who are subject to your influence or control (such as parents or children who consult with you before they trade in securities);
- any person to whom you have disclosed material, nonpublic information; and
- family trusts, family partnerships and similar entities controlled by them or any person described in the above bullets (collectively, "Other Covered Persons").

You are responsible for making sure that the purchase or sale of any security covered by this Policy by any such person complies with this Policy.

The Company also may determine that other persons should be subject to this Policy, such as contractors who have access to material nonpublic information. Any such other persons shall be notified by the Company.

### B. Companies Covered

The prohibition on insider trading in this Policy is not limited to trading in Novavax securities. It includes trading in the securities (such as ADRs, preferred stock, debentures, bonds, and derivative securities) of other firms, such as customers or suppliers of Novavax and those with which Novavax may be negotiating major transactions, such as a corporate collaboration,

novavax

license, acquisition, investment or sale. Information that is not material to the Company may nevertheless be material to one of those other firms. The prohibition on insider trading in this Policy also applies to trading in the securities of all other companies from which you have obtained material nonpublic information in the scope of your employment.

### C. Transactions Covered

Trading includes purchases and sales of stock, derivative securities on hedging transactions such as put and call options and short and long sales, convertible debentures or preferred stock, and debt securities (debentures, bonds and notes).

Transactions in mutual funds, exchange-traded funds, index funds or other “broad basket” funds that own or hold the Company’s securities as one of many investments are not subject to this Policy.

## IV. Statement of Policy

### A. No Trading on Inside Information

You may not trade in the securities of Novavax, directly or through family members or other persons or entities, if you are aware of material nonpublic information relating to the Company. Similarly, you may not trade in the securities of any other company if you are aware of material nonpublic information about that company which you obtained in the course of your employment with Novavax.

### B. No Tipping

You may not pass material nonpublic information on to others or recommend to anyone the purchase or sale of any securities when you are aware of such information. This practice, known as “tipping,” also violates the securities laws and can result in the same civil and criminal penalties that apply to insider trading, even though you did not trade and did not gain any financial benefit from another’s trading.

### C. No Exception for Hardship

The existence of a personal financial emergency does not excuse you from compliance with this Policy.

## V. Special Restrictions Applicable to Designated Persons

In order to help prevent inadvertent violations of the federal securities laws and to avoid even the appearance of trading on the basis of inside information, the Company’s board of directors has adopted certain special restrictions that apply to directors on its board and executive officers (“D&O Persons”) and any other person at the rank of vice president or above (with the D&O Persons, the “Designated Persons”). These special restrictions may also apply to certain other persons designated by the Company from time to time who have specific knowledge of a pending announcement such as the results of a clinical trial, the achievement of a product milestone, an earnings release or any other event-specific

release, in which case such individuals may be deemed a Designated Person for a particular event or time period.

### A. Pre-Clearance Procedures

No Designated Person may engage in any transaction involving the Company's securities (including an option exercise, or a gift, loan, pledge or hedge, contribution to a trust or any other transfer) (each a "Covered Transaction") without first obtaining pre-clearance of the transaction from the Chief Legal Officer or the Chief Legal Officer's Designee. Notwithstanding the foregoing, no D&O Person shall be permitted to engage in any hedging or pledging transactions involving Novavax's securities. A request for pre-clearance must be submitted to the Chief Legal Officer or the Chief Legal Officer's Designee at least three business days in advance of the proposed transaction. If the Chief Legal Officer seeks to engage in a Covered Transaction, the Chief Legal Officer must submit a request for pre-clearance to the Chief Executive Officer or the Chief Financial Officer at least three business days in advance of the proposed transaction.

### B. Quarterly Blackout Periods

The Company's announcement of its quarterly financial results almost always has the potential to have a material effect on the market for the Company's securities. Therefore, to avoid even the appearance of trading on the basis of material nonpublic information, no Designated Person may engage in any Covered Transaction during the period beginning the first business day after the end of each calendar quarter (i.e., March, June, September and December) and ending after the second full business day following the release of the Company's earnings for that quarter. In addition, certain other employees and consultants involved in the preparation of the Company's financial statements or the earnings release announcement shall be subject to the same restrictions if notified by the Company that the Quarterly Blackout Periods applies to such person.

### C. Blackout Periods for Interim Earnings Releases and Event-Specific Releases

The Company may on occasion issue interim earnings guidance or other potentially material information such as execution of an important contract or product development milestone, by means of a press release, SEC filing on Form 8-K, other SEC filing or other means designed to achieve widespread dissemination of the information. No Designated Person may engage in any Covered Transaction after being notified that a blackout period is being imposed with respect to any such event until the second full business day following the release of the relevant information. Any other employee or consultant with specific knowledge of the event will be subject to the same restrictions if notified by the Company that a blackout period is being imposed on such person with respect to such event.

### D. Blackout Periods for Results of Clinical Trials

The Company will conduct clinical trials from time to time. To avoid the appearance of trading on the basis of material nonpublic information, no Designated Person may engage in any Covered Transaction during the period beginning two weeks prior to the date that the Company

anticipates receiving data from a clinical trial and ending after the second full business day following the release of the results of such clinical trial. Any other employee or consultant with specific knowledge of the clinical trials will be subject to the same restrictions if notified by the Company that a blackout period is being imposed on such person with respect to such clinical trials.

The Blackout Periods described in Sections V.B-D are collectively referred to herein as the “Blackout Periods.”

## VI. 10b5-1 Sales Plans

Rule 10b5-1 provides an affirmative defense from insider trading liability under the federal securities laws for trading programs that meet certain requirements. Once a 10b5-1 sales plan is adopted, you must not exercise any influence over the amount of securities to be traded, the price at which they are to be traded or the date of the trade. The program must either specify (including by formula) the amount, pricing and timing of transactions in advance or delegate discretion on those matters to any independent third party.

Any director, executive officer or employee may adopt a 10b5-1 sales plan after prior review and consent of the Company’s Chief Legal Officer (or in the case of the Chief Legal Officer, the Chief Executive Officer or the Chief Financial Officer). Any such 10b5-1 sales plan must comply with Rule 10b5-1(c)(B)(1) of the SEC Rules.

Designated Persons may not adopt, amend or terminate a 10b5-1 sales plan during a Blackout Period and may only adopt or amend a 10b5-1 sales plan (i) while not in possession of any material nonpublic information; and (ii) upon certifying to the Chief Legal Officer (or in the case of the Chief Legal Officer, the Chief Executive Officer or the Chief Financial Officer) that such Designated Person is not in possession of any material nonpublic information. Any 10b5-1 sales plan adopted by a D&O Person shall have a minimum duration of six (6) months and cannot be modified. If a D&O Person cancels his or her 10b5-1 sales plan, such D&O Person may not trade pursuant to a new 10b5-1 sales plan for a minimum of 90 days.

Trades by individuals in the Company’s securities that are executed pursuant to an approved 10b5-1 plan are not subject to the prohibition on trading on the basis of material nonpublic information contained in this Policy or to the restrictions set forth above relating to pre-clearance procedures and Blackout Periods (except as set forth in this paragraph). With respect to any trade that must be disclosed on SEC Forms 4 or 5, the reporting person must note whether such trade was made pursuant to a 10b5-1 sales plan.

If a D&O Person proposes to adopt a 10b5-1 sales plan that contemplates or could result in the disposition of greater than 40% of such D&O Person’s then-current holdings, then such plan must be submitted to the Compensation Committee for its approval no less than 10 days prior to adoption (the “Compensation Committee Submission”). For purposes of this paragraph, a D&O Person’s holdings shall be measured using the market value of such holdings as of the date of such D&O Person’s Compensation Committee Submission.

## VII. Definition of Material Nonpublic Information

novavax

Note that inside information has two important elements - (1) materiality and (2) public availability.

### A. Materiality

Information is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding whether to buy, hold or sell a security. Any information that could reasonably be expected to affect the price of the security is material. No bright-line standard exists for assessing materiality; rather, materiality is based on an assessment of all of the facts circumstances and often is evaluated by enforcement authorities with the benefit of hindsight.

While defining all categories of material information is not possible, the following are some examples of information that ordinarily would be regarded as material:• Projections of future earnings, losses or cash burn or other financial guidance.

• Financial results that are inconsistent with the consensus expectations of the investment community.

• changes to previously announced financial guidance, or the decision to suspend financial guidance.

• A pending or proposed merger, acquisition, tender offer, joint venture or an acquisition or disposition of significant assets that has a reasonable expectation of being consummated.

• A change in management.

• Results of clinical trials.

• Major events regarding Novavax, generally, including the commencement or termination of corporate collaborations or clinical trials, receipt of governmental grants, the execution of licenses, financial developments, or patent or product developments, both positive and negative.

• Pending FDA or other regulatory action.

• Severe liquidity problems or impending bankruptcy.

• Actual or threatened major litigation, or the resolution of such litigation.

• Significant cybersecurity breaches.

• New major contracts, orders, suppliers, customers or finance sources, or the loss thereof.

• Major events regarding Novavax's securities, including the declaration of a stock split or the offering of additional securities.

• E-mails or other notices prohibiting the trading of Novavax securities (i.e., opening or closing the Window) or any other company.

Both positive and negative information can be material. Because trading that receives scrutiny will be evaluated after the fact with the benefit of hindsight, questions concerning the

novavax

materiality of particular information should be resolved in favor of materiality, and trading should be avoided.

### B. Public Availability

Nonpublic information is information that is not generally known or available to the public. In order to establish that the information has been disclosed to the public, it may be necessary to demonstrate that the information has been widely disseminated. Information generally would be considered widely disseminated if it has been disclosed through the Dow Jones “broad tape,” newswire services, a broadcast on widely available internet, radio or television programs, publication in a widely available newspaper, magazine or news website or public disclosure documents filed with the Securities and Exchange Commission (the “SEC”) that are available on the SEC’s website. By contrast, information would generally not be considered widely disseminated if it is available only to the Company’s employees.

One common misconception is that material information loses its “nonpublic” status as soon as a press release is issued disclosing the information. In fact, information is considered to be available to the public only when it has been released broadly to the marketplace (such as by a press release or an SEC filing) and the investing public has had time to absorb the information fully. As a general rule and pursuant to this Policy, information is considered nonpublic until after the second full trading day after the information is released.

## VIII. Certain Prohibited Transactions

### A. Short Sales

You may not engage in short sales of the Company’s securities, defined as sales of securities that are not then owned, including a “short sale against the box,” defined as a sale with delayed delivery.

Short sales of the Company’s securities may evidence an expectation on the part of the seller that the securities will decline in value, and therefore have the potential to signal to the market that the seller lacks confidence in the Company’s prospects. In addition, short sales may reduce a seller’s incentive to seek to improve the Company’s performance.

### B. Publicly Traded Options

You may not engage in transactions in publicly traded options of Company securities, such as puts, calls and other derivative securities, on an exchange or in any other organized market.

Given the relatively short term nature of publicly-traded options, transactions in options may create the appearance that a director or employee, or a consultant or independent contractor who has access to material, nonpublic information relating to the Company, is trading based on material, nonpublic information and focus such person’s attention on short-term performance at the expense of the Company’s long-term objectives.

### C. Hedging Transactions

Certain forms of hedging or monetization transactions that transfer to another, in whole or in part, any of the economic consequences of ownership of the securities, allow a director, employee or consultant to lock in much of the value of his or her stock holdings, often in exchange for all or part of the potential for upside appreciation in the stock.

These transactions allow the director, employee, or consultant to continue to own the covered securities, but without the full risks and rewards of ownership. When that occurs, the director, employee or consultant may no longer have the same objectives as the Company's other shareholders. Therefore, the Company prohibits such transactions.

### D. Exercising Stock Options

Designated Persons may exercise vested options to purchase shares of common stock of the Company with the prior approval of the Approving Person. However, any sale of those shares is subject to the prohibition on trading in the securities under this policy. This prohibition applies to cashless exercises and sales made to cover any tax liability arising from the exercise of the options. Thus, if a Designated Person chooses to exercise stock options when the Blackout Period is in effect or when in possession of material non-public information, then such Designated Person must hold all of the shares of stock purchased upon such exercise until the trading window is open and the inside information is no longer material or has been publicly available for at least two full trading days.

### E. Standing Orders

Standing orders are discouraged by the Company. A standing order placed with a broker to sell or purchase stock at a specified price leaves you with no control over the timing of the transaction. A standing order allows no control to the seller over the timing of purchases or sales, and a standing order transaction executed by the broker when you are aware of material nonpublic information may result in unlawful insider trading and is a violation of this Policy.

### F. Margin Accounts and Pledges

When securities are held in a margin account or pledged as collateral for a loan, such securities may be sold without your consent by the broker if you fail to meet a margin call or by the lender in foreclosure if you default on the loan. A margin or foreclosure sale that occurs when you are aware of material nonpublic information may, under some circumstances, result in unlawful insider trading. Because of this danger, Designated Persons are not permitted to pledge Company securities or hold Company securities in a margin account.

## IX. Post-Termination Transactions

This Policy continues to apply to your transactions in Novavax securities even after you have terminated your employment or other services to Novavax or its subsidiary as follows: if you are aware of material nonpublic information when your employment or service relationship terminates, you may not trade in Novavax securities until that information has become public or is no longer material.

novavax

In all other respects, the procedures set forth in this Policy will cease to apply to your transactions in Novavax securities upon the expiration of any Blackout Period that is applicable to your transactions at the time of your termination of employment or services.

## X. Unauthorized Disclosure

Maintaining the confidentiality of Novavax's information is essential for competitive, security and other business reasons, as well as to comply with securities laws and the confidentiality obligations you have promised to the Company upon commencing your employment or other affiliation with the Company. You should treat all information you learn about Novavax or its business plans in connection with your employment as confidential and proprietary to the Company. Inadvertent disclosure of confidential or inside information may expose Novavax and you to significant risk of investigation and litigation. No one should discuss the Company's material nonpublic information in public areas – such as corridors, airplanes and restaurants – and care should be taken in the handling and disposal of papers containing material nonpublic information.

The timing and nature of Novavax's disclosure of material information to outsiders is subject to legal rules, the breach of which could result in substantial liability to you, the Company and its management. Accordingly, it is important that responses to inquiries about Novavax by the press, investment analysts or others in the financial community be made on Novavax's behalf only through authorized individuals. Please consult Novavax's Non-Disclosure policy in the Company's Employee Handbook for more details regarding its policy on speaking to the media, financial analysts and investors.

## XI. Personal Responsibility

You should remember that the ultimate responsibility for adhering to this Policy and avoiding improper trading rests with you. Persons subject to this Policy have ethical and legal obligations to maintain the confidentiality of information about the Company and to not engage in transactions in Company Securities while in possession of material nonpublic information. Each individual is responsible for making sure that he or she complies with this Policy, and that any Other Covered Person whose transactions are subject to this Policy, as discussed above, also complies with this Policy. In all cases, the responsibility for determining whether an individual is in possession of material nonpublic information rests with that individual, and any action on the part of the Company, or any other employee or director pursuant to this Policy (or otherwise) does not in any way constitute legal advice or insulate an individual from liability under applicable securities laws.

If you violate this Policy, Novavax may take disciplinary action, including dismissal for cause.

## XII. Company Assistance

Your compliance with this Policy is of the utmost importance both for you and for the Company. If you have any questions about this Policy or its application to any proposed transaction, you may obtain additional guidance from the Company's Chief Legal Officer, Mark Casey, or the Chief Legal Officer's designee. Do not try to resolve uncertainties on your own, as the rules relating to insider trading are often complex, not always intuitive and carry severe consequences.

## XIII. Certification

All employees must certify their understanding of, and intent to comply with, this Policy. A copy of the certification that employees must sign is enclosed with this Policy. This Policy was originally approved on January 25, 2013 and updated on [[XXX]]. This version supersedes any previous policy of Novavax, Inc. concerning insider trading.

Appendix NOVAVAX, INC. INSIDER TRADING POLICY CERTIFICATION

To Novavax, Inc.:

I, ______________________________ (name), have received and read a copy of the Novavax, Inc. Insider Trading Policy dated [ ] (the "Policy"). I hereby agree to comply with the specific requirements of the Policy in all respects during my employment or other service relationship with Novavax, Inc. I understand that my failure to comply in all respects with the Policy is a basis for termination for cause of my employment or other service relationship with Novavax, Inc.

__________________________________ (Signature) __________________________________ (Date)

# ANNEX 2 TO EXHIBIT A

novavax

**Insider Trading Policy**

Effective Date: ~~December 8, 2022~~[[XXX]]

## I. Purpose

The board of directors of Novavax, Inc. (the "Company" or "Novavax") has adopted this Insider Trading Policy (the "Policy") for our directors, officers, employees and consultants with respect to the trading of the Company's securities and the handling of confidential information about the Company, as well as the securities of other publicly traded companies with whom we have a relationship. This Policy is publicly available on the Company's website.

Federal and state securities laws generally prohibit the purchase or sale of a company's securities by persons who are aware of material information about that company that is not generally known or available to the public. These laws also generally prohibit persons who are aware of such material nonpublic information from disclosing this information to others who may trade. Companies and their controlling persons are also subject to liability if they fail to take reasonable steps to prevent insider trading by company personnel.

It is important that you understand the breadth of activities that constitute illegal insider trading and the consequences, which can be severe. The U.S. Securities and Exchange Commission (the "SEC"), the NASDAQ stock market, the Financial Industry Regulatory Authority, as well as foreign regulatory authorities, investigate and are very effective at detecting insider trading. The SEC, together with the U.S. Attorneys, pursue insider trading vigorously. Cases have been successfully prosecuted against trading by employees at all levels whether through foreign accounts, trading by family members and friends or trading involving only a small number of shares.

This Policy is designed to prevent insider trading or allegations of insider trading, and to protect Novavax's reputation for integrity and ethical conduct. ~~It~~The Chief Legal Officer shall be responsible for administering this Policy (in such capacity, the "Plan Administrator"), and it is your obligation to understand and comply with ~~this Policy~~it. Should you have any questions regarding this Policy, please contact the Company's Chief ~~Financial~~Legal Officer, at 240-268-2000.

## II. Penalties for Noncompliance

### A. Civil and Criminal Penalties

Potential penalties for insider trading violations include (1) imprisonment for up to 20 years, (2) criminal fines of up to $5 million and (3) civil fines of up to three times the profit gained, or loss avoided.

### B. Controlling Person Liability

If Novavax fails to take appropriate steps to prevent illegal insider trading, the Company may have "controlling person" liability for a trading violation, with civil penalties of up to the greater of $1 million and three times the profit gained or loss avoided, as well as a criminal penalty of up to $25 million. The civil penalties can extend personal liability to Novavax's directors,

officers and other supervisory personnel if they fail to take appropriate steps to prevent insider trading.

### C. Company Sanctions

Failure to comply with this Policy may also subject you to Novavax-imposed sanctions, ~~including dismissal for cause,~~ whether or not your failure to comply with this Policy results in violations of law~~.~~, including dismissal for cause, disgorgement, cancellation of outstanding stock options, disqualification from performance-based compensation, and other disciplinary measures. The Audit Committee of the Novavax Board of Directors will administer sanctions for violations of this Policy, as appropriate.

### D. Reporting

Any complaint concerning actual or potential violations of this Policy should be submitted directly to the Plan Administrator. If a complaint concerns actual or potential violations of this Policy by the Plan Administrator, such complaint should be submitted directly to the Audit Committee. The Plan Administrator shall provide quarterly reports to the Audit Committee regarding any complaints concerning actual or potential violations of this Policy received by the Plan Administrator.

## III. Scope

### A. Persons Covered

As a director, officer, employee or consultant of Novavax or its subsidiary, this Policy applies to you. The restrictions set forth in this Policy, including those set forth in the Addendum, also apply to:

- your family members who reside with you;
- anyone else who lives in your household;
- any family members who do not live in your household but whose securities transactions are directed by you or who are subject to your influence or control (such as parents or children who consult with you before they trade in securities);
- any person to whom you have disclosed material, nonpublic information; and
- family trusts, family partnerships and similar entities controlled by them or any person described in the above bullets (collectively, "Other Covered Persons").

You are responsible for making sure that the purchase or sale of any security covered by this Policy by any such person complies with this Policy.

The Company also may determine that other persons should be subject to this Policy, such as contractors who have access to material nonpublic information. Any such other persons shall be notified by the Company.

### B. Companies Covered

The prohibition on insider trading in this Policy is not limited to trading in Novavax securities. It includes trading in the securities (such as ADRs, preferred stock, debentures, bonds, and derivative securities) of other firms, such as customers or suppliers of Novavax and those with which Novavax may be negotiating major transactions, such as a corporate collaboration, license, acquisition, investment or sale. Information that is not material to the Company may nevertheless be material to one of those other firms. The prohibition on insider trading in this Policy also applies to trading in the securities of all other companies from which you have obtained material nonpublic information in the scope of your employment.

### C. Transactions Covered

Trading includes purchases and sales of stock, derivative securities on hedging transactions such as put and call options and short and long sales, convertible debentures or preferred stock, and debt securities (debentures, bonds and notes).

Transactions in mutual funds, exchange-traded funds, index funds or other "broad basket" funds that own or hold the Company's securities as one of many investments are not subject to this Policy.

## IV. Statement of Policy

### A. No Trading on Inside Information

You may not trade in the securities of Novavax, directly or through family members or other persons or entities, if you are aware of material nonpublic information relating to the Company. Similarly, you may not trade in the securities of any other company if you are aware of material nonpublic information about that company which you obtained in the course of your employment with Novavax.

### B. No Tipping

You may not pass material nonpublic information on to others or recommend to anyone the purchase or sale of any securities when you are aware of such information. This practice, known as "tipping," also violates the securities laws and can result in the same civil and criminal penalties that apply to insider trading, even though you did not trade and did not gain any financial benefit from another's trading.

### C. No Exception for Hardship

The existence of a personal financial emergency does not excuse you from compliance with this Policy.

## V. Special Restrictions Applicable to Designated Persons

In order to help prevent inadvertent violations of the federal securities laws and to avoid even the appearance of trading on the basis of inside information, the Company's board of directors has adopted certain special restrictions that apply to directors on its board and executive officers ("D&O Persons") and any other person at the rank of vice president ~~(~~or above (with the D&O Persons, the "Designated

Persons"). These special restrictions may also apply to certain other persons designated by the Company from time to time who have specific knowledge of a pending announcement such as the results of a clinical trial, the achievement of a product milestone, an earnings release or any other event-specific release, in which case such individuals may be deemed a Designated Person for a particular event or time period.

### A. Pre-Clearance Procedures

No Designated Person may engage in any transaction involving the Company's securities (including an option exercise, or a gift, loan, pledge or hedge, contribution to a trust or any other transfer) (each a "Covered Transaction") without first obtaining pre-clearance of the transaction from the Chief Legal Officer or the Chief Legal Officer's Designee. Notwithstanding the foregoing, no ~~officer or director of Novavax~~D&O Person shall be permitted to engage in any hedging or pledging transactions involving Novavax's securities. A request for pre-clearance ~~should~~must be submitted to the Chief Legal Officer or the Chief Legal Officer's Designee at least ~~two~~three business days in advance of the proposed transaction~~ whenever possible.~~. If the Chief Legal Officer seeks to engage in a Covered Transaction, the Chief Legal Officer must submit a request for pre-clearance to the Chief Executive Officer or the Chief Financial Officer at least three business days in advance of the proposed transaction.

### B. Quarterly Blackout Periods

The Company's announcement of its quarterly financial results almost always has the potential to have a material effect on the market for the Company's securities. Therefore, to avoid even the appearance of trading on the basis of material nonpublic information, no Designated Person may engage in any Covered Transaction during the period beginning the first business day after the end of each calendar quarter (i.e., March, June, September and December) and ending after the second full business day following the release of the Company's earnings for that quarter. In addition, certain other employees and consultants involved in the preparation of the Company's financial statements or the earnings release announcement shall be subject to the same restrictions if notified by the Company that the Quarterly Blackout Periods applies to such person.

### C. Blackout Periods for Interim Earnings Releases and Event-Specific Releases

The Company may on occasion issue interim earnings guidance or other potentially material information such as execution of an important contract or product development milestone, by means of a press release, SEC filing on Form 8-K, other SEC filing or other means designed to achieve widespread dissemination of the information. No Designated Person may engage in any Covered Transaction after being notified that a blackout period is being imposed with respect to any such event until the second full business day following the release of the relevant information. Any other employee or consultant with specific knowledge of the event will be subject to the same restrictions if notified by the Company that a blackout period is being imposed on such person with respect to such event.

novavax

### D. Blackout Periods for Results of Clinical Trials

The Company will conduct clinical trials from time to time. To avoid the appearance of trading on the basis of material nonpublic information, no Designated Person may engage in any Covered Transaction during the period beginning two weeks prior to the date that the Company anticipates receiving data from a clinical trial and ending after the second full business day following the release of the results of such clinical trial. Any other employee or consultant with specific knowledge of the clinical trials will be subject to the same restrictions if notified by the Company that a blackout period is being imposed on such person with respect to such clinical trials.

The Blackout Periods described in Sections V.B-D are collectively referred to herein as the "Blackout Periods."

## VI. 10b5-1 Sales Plans

Rule 10b5-1 provides an affirmative defense from insider trading liability under the federal securities laws for trading programs that meet certain requirements. Once a 10b5-1 sales plan is adopted, you must not exercise any influence over the amount of securities to be traded, the price at which they are to be traded or the date of the trade. The program must either specify (including by formula) the amount, pricing and timing of transactions in advance or delegate discretion on those matters to any independent third party.

Any director, executive officer or employee may adopt a 10b5-1 sales plan after prior review and consent of the Company's Chief Legal Officer (or in the case of the Chief Legal Officer, the Chief Executive Officer or the Chief Financial Officer). Any such 10b5-1 sales ~~plans generally may not be adopted, amended or terminated during a Blackout Period and may only be adopted or amended while the person adopting or amending the plan is not aware of any material nonpublic information.~~ plan must comply with Rule 10b5-1(c)(B)(1) of the SEC Rules.

Designated Persons may not adopt, amend or terminate a 10b5-1 sales plan during a Blackout Period and may only adopt or amend a 10b5-1 sales plan (i) while not in possession of any material nonpublic information; and (ii) upon certifying to the Chief Legal Officer (or in the case of the Chief Legal Officer, the Chief Executive Officer or the Chief Financial Officer) that such Designated Person is not in possession of any material nonpublic information. Any 10b5-1 sales plan adopted by a D&O Person shall have a minimum duration of six (6) months and cannot be modified. If a D&O Person cancels his or her 10b5-1 sales plan, such D&O Person may not trade pursuant to a new 10b5-1 sales plan for a minimum of 90 days.

Trades by individuals in the Company's securities that are executed pursuant to ~~such~~ an approved 10b5-1 plan are not subject to the prohibition on trading on the basis of material nonpublic information contained in this Policy or to the restrictions set forth above relating to pre-clearance procedures and Blackout Periods (except as set forth in this paragraph). With respect to any trade that must be disclosed on SEC Forms 4 or 5, the reporting person must note whether such trade was made pursuant to a 10b5-1 sales plan.

novavax

If a D&O Person proposes to adopt a 10b5-1 sales plan that contemplates or could result in the disposition of greater than 40% of such D&O Person's then-current holdings, then such plan must be submitted to the Compensation Committee for its approval no less than 10 days prior to adoption (the "Compensation Committee Submission"). For purposes of this paragraph, a D&O Person's holdings shall be measured using the market value of such holdings as of the date of such D&O Person's Compensation Committee Submission.

## VII. Definition of Material Nonpublic Information

Note that inside information has two important elements - (1) materiality and (2) public availability.

### A. Materiality

Information is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding whether to buy, hold or sell a security. Any information that could reasonably be expected to affect the price of the security is material. No bright-line standard exists for assessing materiality; rather, materiality is based on an assessment of all of the facts circumstances and often is evaluated by enforcement authorities with the benefit of hindsight.

While defining all categories of material information is not possible, the following are some examples of information that ordinarily would be regarded as material:• Projections of future earnings, losses or cash burn or other financial guidance.

• Financial results that are inconsistent with the consensus expectations of the investment community.

• changes to previously announced financial guidance, or the decision to suspend financial guidance.

• A pending or proposed merger, acquisition, tender offer, joint venture or an acquisition or disposition of significant assets that has a reasonable expectation of being consummated.

• A change in management.

• Results of clinical trials.

• Major events regarding Novavax, generally, including the commencement or termination of corporate collaborations or clinical trials, receipt of governmental grants, the execution of licenses, financial developments, or patent or product developments, both positive and negative.

• Pending FDA or other regulatory action.

• Severe liquidity problems or impending bankruptcy.

• Actual or threatened major litigation, or the resolution of such litigation.

• Significant cybersecurity breaches.

• New major contracts, orders, suppliers, customers or finance sources, or the loss thereof.

• Major events regarding Novavax's securities, including the declaration of a stock split or the offering of additional securities.

• E-mails or other notices prohibiting the trading of Novavax securities (i.e., opening or closing the Window) or any other company.

Both positive and negative information can be material. Because trading that receives scrutiny will be evaluated after the fact with the benefit of hindsight, questions concerning the materiality of particular information should be resolved in favor of materiality, and trading should be avoided.

### B. Public Availability

Nonpublic information is information that is not generally known or available to the public. In order to establish that the information has been disclosed to the public, it may be necessary to demonstrate that the information has been widely disseminated. Information generally would be considered widely disseminated if it has been disclosed through the Dow Jones "broad tape," newswire services, a broadcast on widely available internet, radio or television programs, publication in a widely available newspaper, magazine or news website or public disclosure documents filed with the Securities and Exchange Commission (the "SEC") that are available on the SEC's website. By contrast, information would generally not be considered widely disseminated if it is available only to the Company's employees.

One common misconception is that material information loses its "nonpublic" status as soon as a press release is issued disclosing the information. In fact, information is considered to be available to the public only when it has been released broadly to the marketplace (such as by a press release or an SEC filing) and the investing public has had time to absorb the information fully. As a general rule and pursuant to this Policy, information is considered nonpublic until after the second full trading day after the information is released.

## VIII. Certain Prohibited Transactions

### A. Short Sales

You may not engage in short sales of the Company's securities, defined as sales of securities that are not then owned, including a "short sale against the box," defined as a sale with delayed delivery.

Short sales of the Company's securities may evidence an expectation on the part of the seller that the securities will decline in value, and therefore have the potential to signal to the market that the seller lacks confidence in the Company's prospects. In addition, short sales may reduce a seller's incentive to seek to improve the Company's performance.

novavax

### B. Publicly Traded Options

You may not engage in transactions in publicly traded options of Company securities, such as puts, calls and other derivative securities, on an exchange or in any other organized market.

Given the relatively short term nature of publicly-traded options, transactions in options may create the appearance that a director or employee, or a consultant or independent contractor who has access to material, nonpublic information relating to the Company, is trading based on material, nonpublic information and focus such person's attention on short-term performance at the expense of the Company's long-term objectives.

### C. Hedging Transactions

Certain forms of hedging or monetization transactions that transfer to another, in whole or in part, any of the economic consequences of ownership of the securities, allow a director, employee or consultant to lock in much of the value of his or her stock holdings, often in exchange for all or part of the potential for upside appreciation in the stock.

These transactions allow the director, employee, or consultant to continue to own the covered securities, but without the full risks and rewards of ownership. When that occurs, the director, employee or consultant may no longer have the same objectives as the Company's other shareholders. Therefore, the Company prohibits such transactions.

### D. Exercising Stock Options

Designated Persons may exercise vested options to purchase shares of common stock of the Company with the prior approval of the Approving Person. However, any sale of those shares is subject to the prohibition on trading in the securities under this policy. This prohibition applies to cashless exercises and sales made to cover any tax liability arising from the exercise of the options. Thus, if a Designated Person chooses to exercise stock options when the Blackout Period is in effect or when in possession of material non-public information, then such Designated Person must hold all of the shares of stock purchased upon such exercise until the trading window is open and the inside information is no longer material or has been publicly available for at least two full trading days.

### E. Standing Orders

Standing orders are discouraged by the Company. A standing order placed with a broker to sell or purchase stock at a specified price leaves you with no control over the timing of the transaction. A standing order allows no control to the seller over the timing of purchases or sales, and a standing order transaction executed by the broker when you are aware of material nonpublic information may result in unlawful insider trading and is a violation of this Policy.

### F. Margin Accounts and Pledges

When securities are held in a margin account or pledged as collateral for a loan, such securities may be sold without your consent by the broker if you fail to meet a margin call or by the

lender in foreclosure if you default on the loan. A margin or foreclosure sale that occurs when you are aware of material nonpublic information may, under some circumstances, result in unlawful insider trading. Because of this danger, Designated Persons are not permitted to pledge Company securities or hold Company securities in a margin account.

### IX. Post-Termination Transactions

This Policy continues to apply to your transactions in Novavax securities even after you have terminated your employment or other services to Novavax or its subsidiary as follows: if you are aware of material nonpublic information when your employment or service relationship terminates, you may not trade in Novavax securities until that information has become public or is no longer material.

In all other respects, the procedures set forth in this Policy will cease to apply to your transactions in Novavax securities upon the expiration of any Blackout Period that is applicable to your transactions at the time of your termination of employment or services.

### X. Unauthorized Disclosure

Maintaining the confidentiality of Novavax's information is essential for competitive, security and other business reasons, as well as to comply with securities laws and the confidentiality obligations you have promised to the Company upon commencing your employment or other affiliation with the Company. You should treat all information you learn about Novavax or its business plans in connection with your employment as confidential and proprietary to the Company. Inadvertent disclosure of confidential or inside information may expose Novavax and you to significant risk of investigation and litigation. No one should discuss the Company's material nonpublic information in public areas – such as corridors, airplanes and restaurants – and care should be taken in the handling and disposal of papers containing material nonpublic information.

The timing and nature of Novavax's disclosure of material information to outsiders is subject to legal rules, the breach of which could result in substantial liability to you, the Company and its management. Accordingly, it is important that responses to inquiries about Novavax by the press, investment analysts or others in the financial community be made on Novavax's behalf only through authorized individuals. Please consult Novavax's Non-Disclosure policy in the Company's Employee Handbook for more details regarding its policy on speaking to the media, financial analysts and investors.

### XI. Personal Responsibility

You should remember that the ultimate responsibility for adhering to this Policy and avoiding improper trading rests with you. Persons subject to this Policy have ethical and legal obligations to maintain the confidentiality of information about the Company and to not engage in transactions in Company Securities while in possession of material nonpublic information. Each individual is responsible for making sure that he or she complies with this Policy, and that any Other Covered Person whose transactions are subject to this Policy, as discussed above, also complies with this Policy. In all cases, the responsibility for determining whether an individual is in possession of material nonpublic information rests with that individual, and any action on the part of the Company, or any other

novavax

employee or director pursuant to this Policy (or otherwise) does not in any way constitute legal advice or insulate an individual from liability under applicable securities laws.

If you violate this Policy, Novavax may take disciplinary action, including dismissal for cause.

### XII. Company Assistance

Your compliance with this Policy is of the utmost importance both for you and for the Company. If you have any questions about this Policy or its application to any proposed transaction, you may obtain additional guidance from the Company's Chief Legal Officer, ~~John Herrmann~~Mark Casey, or the Chief Legal Officer's designee. Do not try to resolve uncertainties on your own, as the rules relating to insider trading are often complex, not always intuitive and carry severe consequences.

### XIII. Certification

All employees must certify their understanding of, and intent to comply with, this Policy. A copy of the certification that employees must sign is enclosed with this Policy. This Policy was originally approved on January 25, 2013 and updated on ~~December 8, 2022~~[[XXX]]. This version supersedes any previous policy of Novavax, Inc. concerning insider trading.

novavax

Appendix NOVAVAX, INC. INSIDER TRADING POLICY CERTIFICATION

To Novavax, Inc.:

I, ______________________________ (name), have received and read a copy of the Novavax, Inc. Insider Trading Policy dated [ ] (the "Policy"). I hereby agree to comply with the specific requirements of the Policy in all respects during my employment or other service relationship with Novavax, Inc. I understand that my failure to comply in all respects with the Policy is a basis for termination for cause of my employment or other service relationship with Novavax, Inc.

__________________________________ (Signature) __________________________________ (Date)

| **Summary report: Litera Compare for Word 11.3.1.3 Document comparison done on 10/14/2024 2:23:56 PM** | |
|---|---|
| **Style name:** RG_Default_Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** NVAX - Original Insider Trading Policy [Dec. 2022].docx | |
| **Modified filename:** Annex 1 to Ex. A to Settlement Stipulation _REVISED INSIDER TRADING POLICY_(147940647.1).docx | |
| **Changes:** | |
| Add | 27 |
| ~~Delete~~ | 17 |
| ~~Move From~~ | 0 |
| Move To | 0 |
| Table Insert | 0 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 44 |

# ANNEX 3 TO EXHIBIT A

**RESOLUTIONS OF THE BOARD OF DIRECTORS OF NOVAVAX, INC.**
[[DATE]]

**MANAGEMENT-LEVEL DISCLOSURE COMMITTEE**

**WHEREAS**, the Board of Directors of Novavax Inc. (the "Company") has determined that it is advisable and in the best interests of the Company and its stockholders to adopt a charter to govern the activities of a management-level committee tasked with monitoring the content of the Company's public disclosures and the process for preparing such disclosures;

**NOW, THEREFORE,**

**BE IT RESOLVED**, that the Board of Directors has adopted the charter attached as Exhibit A to govern the activities of the Management-Level Disclosure Committee (the "Committee").

**FURTHER RESOLVED,** that the Committee shall comprise executive leaders and/or their designees from the following functional areas, as from time to time designated by the Chief Executive Officer: (i) Finance, (ii) Legal, (iii) Operations, and (iv) as appropriate, Research & Development and Commercial.

**FURTHER RESOLVED**, that the Committee is authorized to designate from among its members a Disclosure Committee Chairperson, who shall schedule and preside over Committee meetings and who shall have the authority to interpret the Committee's mandate, policies, and procedures as necessary;

**FURTHER RESOLVED**, that the Committee is authorized to engage such outside consultants or advisors as the Committee shall deem necessary or desirable in order to assist it in the discharge of its responsibilities;

**FURTHER RESOLVED**, that the costs and expenses incurred by the Committee, including the costs and expenses of its consultants or advisors, shall be paid by the Company;

**FURTHER RESOLVED**, that in addition to (and without limitation of) any rights provided under the certificate of incorporation or bylaws of the Company, any agreement, or applicable law, the Company shall indemnify and advance expenses to the members of the Committee for all actions taken or omissions made by them in connection with their service on the Committee.

## Exhibit A

### Management-Level Disclosure Committee Charter

The Management-Level Disclosure Committee and/or its designees or representatives shall:

- Establish and maintain a policy designed to ensure that information, including information in the Company's filings with the Securities & Exchange Commission ("SEC"), is disclosed accurately and timely;

- Evaluate the integrity and effectiveness of the Company's disclosure controls, on an annual basis following the filing of the Company's Annual Report on Form 10-K;

- Conduct an annual review of industry-wide disclosure oversight practices and implement those it deems necessary and appropriate;

- Meet with the Audit Committee on a quarterly basis to communicate any concerns or input related to the disclosures in the Company's Annual Reports on Form 10-K or Quarterly Reports on Form 10-Q;

- Review drafts of (i) the Company's quarterly earnings press releases and related materials (such as earnings call scripts) and (ii) Quarterly Reports on Form 10-Q and Annual Reports on Form 10-K to evaluate the adequacy and accuracy of the disclosures included therein, seeking input from internal subject matter experts as necessary; and

- Report annually to the full Board of Directors.

# EXHIBIT B

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE NOVAVAX INC. STOCKHOLDER DERIVATIVE LITIGATION | Master File No.: 8:21-cv-02996-TDC |
| This Document Relates To:<br><br>ALL ACTIONS | (Consolidated with: No. 8:22-cv-01415-TDC and No. 1:22-cv-01417-TDC) |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT, APPROVING FORM AND MANNER OF NOTICE, AND SETTING DATE FOR HEARING ON FINAL APPROVAL OF SETTLEMENT**

WHEREAS, (i) the Special Litigation Committee of the Board of Directors of Novavax Inc. (the "Special Litigation Committee" or "SLC"); (ii) Plaintiffs Amy Snyder, Charles R. Blackburn, Michele Rosati, Robert Meyer, as beneficiary of the Robert E. Meyer (IRA), and Shui Shing Yung (collectively, "Plaintiffs"); (iii) nominal defendant Novavax Inc. ("Novavax" or "the Company"), a Delaware corporation; (iv) Defendants Stanley C. Erck, John J. Trizzino, Gregory M. Glenn, John A. Herrmann III, David M. Mott, Michael A. McManus, and James F. Young (collectively, the "Defendants," and with the SLC and Plaintiffs, the "Settling Parties") have entered into a Stipulation and Agreement of Compromise, Settlement,

and Release dated November 22, 2024 (the "Stipulation"), which sets forth the terms and conditions for the proposed settlement (the "Settlement") of the above-captioned action (the "Action"), subject to review and approval by this Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure upon notice to Current Novavax Stockholders (as defined below);

**NOW**, upon application of the parties to the Action, after review and consideration of the Stipulation filed with the Court and the exhibits annexed thereto,

**IT IS HEREBY ORDERED** this ___ day of __________, 202_, as follows:

1. Except for terms defined herein, the Court adopts and incorporates the definitions in the Stipulation for the purposes of this order.

2. The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation and the exhibits attached thereto, subject to further consideration at the Settlement Hearing to be held as described below.

3. A hearing (the "Settlement Hearing") shall be held on __________________, 202_, at _______ a.m./p.m., at the United States District Court for the District of Maryland, Southern Division, 650 Cherrywood Lane, Greenbelt, MD 20770, or as may be undertaken via a remote proceeding such as Zoom or by telephone conference, to, among other things, (a) determine whether the proposed Settlement, on the terms and conditions provided for in the Stipulation, is fair, reasonable, and adequate and in the best interests of Novavax and all Current

Novavax Stockholders; (b) determine whether the Court should finally approve the Settlement and enter the Judgment, substantially in the form attached as Exhibit D to the Stipulation, dismissing the Action with prejudice against Defendants, and extinguishing and releasing the Released Claims as against the Released Persons; (c) consider Plaintiffs' Counsel's application for an all-in award of attorneys' fees and litigation expenses to Plaintiffs' Counsel (the "Fee and Expense Award"); and (d) consider any other matters that may properly be brought before the Court in connection with the Settlement. Novavax stockholders should check the Court's docket and the Court's website in advance of the Settlement Hearing to determine whether that hearing will occur in person at the Court or via a remote link or teleconference.

4. The Settlement Hearing may be adjourned by the Court from time to time without further notice to Current Novavax Stockholders other than by announcement at the Settlement Hearing or other adjournment thereof, or a notation on the docket in the Action.

5. The Court reserves the right to approve the Settlement at or after the Settlement Hearing, with such modifications as may be consented to by the Settling Parties, and without further notice to the Current Novavax Stockholders. The Court retains jurisdiction over this Action to consider further applications arising out of or connected with the proposed Settlement.

6. The Court: (a) approves, as to form and content, the Notice of Pendency and Proposed Settlement of Derivative Action, Settlement Hearing, and Right to Appear (the "Notice") filed by the parties with the Stipulation as Exhibit C; and (b) finds that the mailing of the Notice in the manner set forth herein (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Current Novavax Stockholders of the pendency of the Action, the effect of the proposed Settlement (including the Releases to be provided thereunder), Plaintiffs' Co-Lead Counsel's application for a Fee and Expense Award in connection with the Settlement, Current Novavax Stockholders' rights to object to any aspect of the Settlement, including Plaintiffs' Co-Lead Counsel's application for a Fee and Expense Award, and to appear at the Settlement Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process, and all other applicable law and rules. The date and time of the Settlement Hearing shall be included in the Notice when it is distributed.

7. No later than ten (10) business days after the entry of this Preliminary Approval Order (the "Notice Date"), Novavax shall mail, or cause to be mailed, by first class U.S. mail or other mail service if mailed outside the U.S., postage pre-paid, the Notice, substantially in the form annexed as Exhibit C to the Stipulation,

to all Current Novavax Stockholders who are record owners of Novavax common stock as of the close of business on November 22, 2024 at their last known address appearing in the stock transfer records maintained by or on behalf of Novavax. All Current Novavax Stockholders who are record holders of Novavax common stock on behalf of beneficial owners shall be directed to either: (i) within seven (7) calendar days of receipt of the Notice, request from the settlement administrator retained by Novavax for this Settlement (the "Settlement Administrator") sufficient copies of the Notice to forward to all such beneficial owners, and within seven (7) calendar days of receipt of those Notices, forward them to all such beneficial owners; or (ii) within seven (7) calendar days of receipt of the Notice, provide a list of the names, addresses, and, if available, email addresses of all such beneficial owners to the Settlement Administrator, in which event the Settlement Administrator shall promptly mail the Notice to such beneficial owners.

8. No later than ten (10) business days after the entry of this Preliminary Approval Order, Novavax shall cause copies of the Notice and this Stipulation to be posted on Novavax's website, which documents shall remain posted on that website through the Effective Date of the Settlement.

9. Novavax shall pay any and all costs and expenses related to providing notice of the proposed Settlement ("Notice Costs") regardless of whether the Court declines to approve the Settlement or the Effective Date otherwise fails to occur. In

no event shall Plaintiffs, any other Novavax stockholder, the Defendants, or any of their attorneys (including Plaintiffs' Co-Lead Counsel) be responsible for any Notice Costs.

10. At least ten (10) business days prior to the Settlement Hearing, Novavax shall file with the Court proof, by affidavit or declaration, of such mailing.

11. As set forth in the Notice, any Current Novavax Stockholder who continues to own shares of Novavax common stock through the date of the Settlement Hearing and who objects to the proposed Settlement, the proposed Judgment to be entered in connection with the Settlement, or Plaintiffs' Co-Lead Counsel's application for a Fee and Expense Award, or who otherwise wishes to be heard ("Objector"), may appear in person (or, as permitted by the Court, by a remote proceeding such as Zoom or by telephone conference if the Settlement Hearing is conducted in such manner) or by his, her, or its attorney at the Settlement Hearing and present any evidence or argument that may be proper and relevant; provided, however, that no Objector shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the Judgment to be entered thereon, or Plaintiffs' Co-Lead Counsel's application for a Fee and Expense Award, unless he, she, or it has, no later than twenty-one (21) calendar days before the Settlement Hearing (unless the Court in its discretion shall thereafter otherwise direct, upon application of such person and for good cause shown), filed a signed,

written objection with the Clerk of the Court, U.S. District Court for the District of Maryland, 6500 Cherrywood Lane, Greenbelt, MD 20770, and served such objection upon each of the following counsel (i) by hand, first class U.S. mail, or express service, and (ii) by email:

*Counsel for the Special Litigation Committee*

WILSON SONSINI GOODRICH & ROSATI
Brad D. Sorrels
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
bsorrels@wsgr.com

*Counsel for Plaintiffs*

LEVI & KORSINSKY, LLP
Gregory M. Nespole
33 Whitehall Street, 17th Floor
New York, NY 10004
(212) 363-7500
gnespole@zlk.com

ROBBINS LLP
Brian J. Robbins
5040 Shoreham Place
San Diego, CA 82122
(619) 525-3990
brobbins@robbinsllp.com

GLANCY PRONGAY & MURRAY LLP
Benjamin I. Sachs-Michaels
745 Fifth Avenue
New York, NY 10151
(212) 935-7400
bsachsmichaels@glancylaw.com

*Counsel for Defendants*

DLA PIPER LLP
John L. Reed
1201 North Market Street, Suite 2100
Wilmington, DE 19801
(302) 468-5700
john.reed@us.dlapiper.com

*Counsel for the Company*

ROPES & GRAY LLP
Peter L. Welsh
800 Boylston Street
Boston, MA 02199
(617) 951-7865
peter.welsh@ropesgray.com

12. Any objections must: (i) state the objection is being filed with respect to "*In re Novavax Inc. Stockholder Derivative Litigation*, Case No. 8:21-cv-02996-TDC"; (ii) state the name, address, and telephone number of the Objector and, if represented by counsel, the name, address, and telephone number of his, her, or its counsel; (iii) be signed by the Objector; (iv) contain a specific, written statement of the objection(s) and the specific reason(s) for the objection(s), including any legal and evidentiary support the Objector wishes to bring to the Court's attention; (v) contain a representation as to whether the objector and/or his, her, or its counsel intends to appear at the Settlement Hearing, and, if the Objector and/or his, her, or its counsel does intend to appear, the identity of any witnesses the Objector may call to testify and any exhibits the Objector intends to introduce into evidence at the

hearing; and (vi) include (1) documentation sufficient to prove that the Objector is a Current Novavax Stockholder (i.e., owned Novavax common stock as of the close of business on November 22, 2024), (2) documentation sufficient to prove that the objector continues to hold shares of Novavax common stock on the date of filing of the objection, and (3) a statement that the Objector will continue to hold shares of Novavax common stock as of the date of the Settlement Hearing. Documentation establishing ownership of Novavax common stock must consist of copies of an official brokerage account statement, a screen shot of an official brokerage account, or an authorized statement from the Objector's broker containing the information found in an account statement. The Settling Parties are authorized to request from any Objector additional information or documentation sufficient to prove his, her, or its holdings of Novavax common stock.

13. Any Person who fails to object in the manner prescribed above shall be deemed to have waived such objection (including the right to appeal), unless the Court in its discretion allows such objection to be heard at the Settlement Hearing, and shall forever be barred from raising such objection in this Action or any other action or proceeding or otherwise contesting the Settlement, Plaintiffs' Co-Lead Counsel's application for a Fee and Expense Award, or any other matter related to the Settlement, in the Action or any other action or proceeding, and will otherwise be bound by the Judgment to be entered and the releases to be given.

14. All papers in support of the Settlement and Plaintiffs' Counsel's request for an award of attorney's fees and expenses shall be filed with the Court and served on or before forty-two (42) days prior to the date set herein for the Settlement Hearing. If reply papers are necessary, they are to be filed with the Court and served no later than fourteen (14) calendar days prior to the Settlement Hearing.

15. At least ten (10) business days prior to the Settlement Hearing, the Settling Parties may file with the Court briefs in response to any objections made by an Objector pursuant to Paragraphs 10-11 above.

16. If the Settlement is approved by the Court following the Settlement Hearing, the Court shall enter the Judgment substantially in the form attached to the Stipulation as Exhibit D.

17. In the event that the Settlement is terminated in its entirety pursuant to the terms of Paragraph 6.1 of the Stipulation or the Effective Date otherwise fails to occur for any reason, the Settlement and the Stipulation shall be canceled and terminated; this Order (except as otherwise provided by the Stipulation) shall become null and void and be without prejudice to the rights of the Settling Parties and Current Novavax Stockholders; and all proceedings in, and parties to, the Action shall revert to their status in this Action as of November 22, 2024.

18. All discovery and other proceedings in this Action (except as may be necessary to carry out the terms and conditions of the proposed Settlement) are

hereby stayed and suspended until further order of the Court. Except as provided in the Stipulation, pending final determination of whether the Stipulation should be approved, all parties to the Action are hereby enjoined against instituting, commencing, prosecuting, continuing, or in any way participating in, whether directly, representatively, individually, derivatively on behalf of Novavax, or in any other capacity, any action or other proceeding asserting any Released Claims against the Released Persons, excluding any claims any Settling Party or Novavax has against their respective insurers, re-insurers, or co-insurers, to the extent such claims are not released pursuant to other documentation, and all Current Novavax Stockholders to the extent they are acting, or purporting to act, derivatively on behalf of Novavax, are hereby enjoined against instituting, commencing, prosecuting, continuing, or in any way participating in any action or other proceeding asserting any Released Claims against the Released Persons.

19. The Court may, for good cause shown, extend any of the deadlines set forth in this Order without further notice to anyone other than the parties to the Action and any Objectors.

________________________________________

THE HONORABLE THEODORE D. CHUANG
UNITED STATES DISTRICT JUDGE

# EXHIBIT C

**EXHIBIT C**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE NOVAVAX INC. STOCKHOLDER DERIVATIVE LITIGATION | Master File No.: 8:21-cv-02996-TDC |
| This Document Relates To:<br><br>ALL ACTIONS | (Consolidated with: No. 8:22-cv-01415-TDC and No. 1:22-cv-01417-TDC) |

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF DERIVATIVE ACTION, SETTLEMENT HEARING, AND RIGHT TO APPEAR**

***The U.S. District Court for the District of Maryland authorized this Notice. This is not a solicitation from a lawyer.***

**TO:** ALL PERSONS WHO ARE RECORD OR BENEFICIAL OWNERS OF NOVAVAX INC. ("NOVAVAX") COMMON STOCK AS OF THE CLOSE OF BUSINESS ON NOVEMBER 22, 2024 ("CURRENT NOVAVAX STOCKHOLDERS")

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT OF THIS ACTION.**

The Special Litigation Committee of the Board of Directors of Novavax and the Plaintiffs in the above-captioned consolidated derivative action (the "Action") have reached a proposed settlement of the Action that provides for a cash payment of $6,750,000.00 to Novavax as stated in Paragraph 16 below, as well as

implementation of corporate governance reforms (the "Settlement").[1] If approved by the United States District Court for the District of Maryland (the "Court"), the Settlement will resolve all claims in the Action.

Please Note: Novavax stockholders will not receive any direct payment from the Settlement. Accordingly, there is no Proof of Claim Form to submit in connection with this Settlement. Also, Novavax stockholders are not required to take any action in response to this Notice.

If you are a nominee who held Novavax common stock for the benefit of another, please read the section below entitled "What if I Owned Shares on Someone Else's Behalf?"

## WHAT IS THE PURPOSE OF THIS NOTICE?

1. The purpose of this Notice is to inform Current Novavax Stockholders of the existence of this Action and how they are affected by the litigation. It is also being sent to inform Current Novavax Stockholders of the terms of the proposed Settlement, and of a hearing to be held by the Court on _________, 202_ at __ a.m./p.m. to consider the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing"). *See* Paragraphs 40-49 below for details about the Settlement Hearing.

2. The Court directed that this Notice be mailed to you because you may be a Current Novavax Stockholder. The Court has directed us to send you this Notice because, as a Current Novavax Stockholder, you have a right to know about your options before the Court rules on the proposed Settlement. Additionally, you

[1] The terms and conditions of the Settlement are set forth in the Stipulation and Agreement of Compromise, Settlement, and Release dated November 22, 2024 (the "Settlement Stipulation" or "Stipulation"), entered into by and among (1) the Special Litigation Committee of the Board of Directors of Novavax (the "Special Litigation Committee" or "SLC"); (2) Plaintiffs Amy Snyder, Charles R. Blackburn, Michele Rosati, Robert Meyer, as beneficiary of the Robert E. Meyer (IRA), and Shui Shing Yung (collectively, "Plaintiffs"); (3) nominal defendant Novavax; and (4) Defendants Stanley C. Erck, John J. Trizzino, Gregory M. Glenn, John A. Herrmann III, David M. Mott, Michael A. McManus, and James F. Young (collectively, the "Defendants") (the SLC, Plaintiffs, Defendants, and the Settling Non-Defendants, collectively, are referred to as the "Settling Parties"). All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Settlement Stipulation.

have the right to understand how this Action and the proposed Settlement generally affect your legal rights.

3. Receipt of this Notice does not mean that you qualify as a Current Novavax Stockholder. Also, the issuance of this Notice is not an expression by the Court of any findings of fact or any opinion concerning the merits of any claim in the Action, and the Court has not yet decided whether to approve the Settlement.

## WHAT IS THIS CASE ABOUT?

THE FOLLOWING SUMMARY OF THE ACTION HAS BEEN PREPARED BY COUNSEL FOR THE SETTLING PARTIES. THE COURT HAS MADE NO FINDINGS WITH RESPECT TO SUCH MATTERS, AND THIS NOTICE IS NOT AN EXPRESSION OR STATEMENT BY THE COURT OF FINDINGS OF FACT.

4. Novavax is a biotechnology company incorporated in Delaware and headquartered in Maryland. It develops vaccines to prevent infectious diseases. In the summer of 2020, Novavax was selected to participate in Operation Warp Speed, the federal government's program to develop and deliver a COVID-19 vaccine. The allegations and claims at issue in this Action are focused on Novavax's development of a COVID-19 vaccine in 2020 and 2021.

5. On November 22, 2021, an action captioned *Meyer v. Erck*, Case No. 8:21-cv-02996 was filed in this Court by a putative Novavax stockholder purporting to proceed derivatively in the right of Novavax. On December 12, 2021, an action captioned *Yung v. Erck*, Case No. 8:21-cv-03248 was filed in this Court by another putative Novavax stockholder purporting to proceed derivatively in the right of Novavax. On June 10, 2022, two actions captioned *Blackburn v. Erck*, Case No. 1:22-cv-01417 and *Snyder v. Erck*, Case No. 8:22-cv-01415 were filed in this Court by two additional putative Novavax stockholders purporting to proceed derivatively in the right of Novavax. On October 6, 2022, the Court consolidated the aforementioned actions into this Action and designated Levi & Korsinsky LLP, Robbins LLP, and Glancy Prongay & Murray LLP as co-lead counsel for Plaintiffs ("Plaintiffs' Co-Lead Counsel").

6. On November 21, 2022, Plaintiffs filed the Verified Third Amended Consolidated Stockholder Derivative Complaint (the "Complaint"), which incorporated books and records obtained from the Company pursuant to 8 *Del. C.* 220. The Complaint remains the operative complaint in the Action. The Complaint asserts four claims: (1) violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), for knowingly making false statements and material omissions in the

Company's November 2021 Proxy Statement ("Count I"); (2) breach of fiduciary duty by the Company's Board of Directors (the "Board") for inadequate oversight of the Company's COVID-19 vaccine development process ("Count II"); (3) breach of fiduciary duty arising from stock sales by certain defendants allegedly made based on material nonpublic information related to alleged challenges and setbacks the Company faced with respect to its application for Emergency Use Authorization of its COVID-19 vaccine candidate in the United States ("Count III"); and (4) unjust enrichment arising from the challenged stock sales ("Count IV"). Among other things, Plaintiffs sought damages and equitable relief.

7. On February 10, 2023, the defendants moved to dismiss all claims asserted in the Complaint (the "Motion to Dismiss") for failure to plead demand futility under Rule 23.1 of the Federal Rules of Civil Procedure and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). By a Memorandum Opinion and Order dated August 21, 2023, the Court granted in part and denied in part the Motion to Dismiss. The Court dismissed Counts I and II for failure to plead demand futility. It also dismissed the claims against Gary C. Evans in Counts III and IV for failure to state a claim. As a result, the only surviving claims in the Action were Counts III and IV (the "Surviving Claims") against the Defendants (as defined above).

8. Separately, certain stockholders of the Company filed derivative actions in the Delaware Court of Chancery and in the Circuit Court for Montgomery County, Maryland (the "Related Actions") asserting substantially similar claims to the Surviving Claims (collectively with the Surviving Claims, the "Stock Sale Claims") and the claims raised in the Litigation Demands (defined below). The Related Actions were captioned *Kirst v. Erck*, et al., No. C-15-CV-21-000618 (Md. Circuit Court), *Needelman v. Erck*, et al., No. C-15-CV-23-001550 (Md. Circuit Court), *Mesa v. Erck, et al.*, No. 2022-0770-NAC (Del. Ch.), and *Acosta v. Erck*, et al., No. 2022-1133-NAC (Del. Ch.). The Board also received two stockholder litigation demands (the "Litigation Demands") alleging breaches of fiduciary duty by certain directors and officers of the Company for engaging in insider trading, making false or misleading statements related to the Company's development of its COVID-19 vaccine, and failing to exercise adequate oversight over the Company's development of its COVID-19 vaccine.

9. On October 6, 2023, the Board established the SLC consisting of independent directors Rachel King and Margaret McGlynn. The SLC was authorized, among other things, to investigate the Stock Sale Claims and the claims and allegations asserted in the Litigation Demands to determine an appropriate course of action with respect thereto, with all such determinations deemed final and binding upon the Company and not subject to review or approval by the full Board.

On November 6, 2023, the parties stipulated to stay the Action pending the SLC's investigation, which was granted by Court Order on November 7, 2023. The Action was stayed for six months, which period was later extended. The other related state court derivative actions were likewise stayed pending the stay in this Action.

10. Between October 2023 and May 2024, the SLC, with the assistance of its independent counsel, Wilson Sonsini Goodrich & Rosati, P.C., conducted a thorough, independent investigation of the relevant claims and issues. The SLC reviewed, with its counsel, the underlying factual and legal merits of each theory of liability advanced in the Action and the Litigation Demands, as well as potential theories of liability not advanced in the Action or the Litigation Demands; reviewed over 50,000 documents collected from 19 custodians; conducted 18 total interviews of the critical witnesses involved in the relevant events, including all Defendants, several current and former non-party employees and directors of the Company, and certain third-party advisors; and had multiple meetings with Plaintiffs' Counsel, Defendants' counsel, and Company counsel, including meetings and written correspondence with Plaintiffs' Counsel in early March 2024 during which Plaintiffs' Counsel communicated their views of the Surviving Claims and their belief that the SLC should prosecute claims against the Defendants on behalf of the Company or allow Plaintiffs' Counsel to continue prosecuting the Surviving Claims. The SLC met regularly during the investigation and, with assistance of counsel, worked toward completing its investigation by May 2024.

11. Following the investigation, the SLC concluded that it would be in the best interests of Novavax for the SLC to engage in discussions with Defendants in an attempt to negotiate a reasonable settlement. The SLC also engaged in discussions with Plaintiffs' Co-Lead Counsel throughout settlement discussions. On June 6, 2024, the parties filed a stipulation extending the stay until August 5, 2024 to allow the SLC to discuss its findings with the parties and explore next steps, which was granted by Court Order.

12. Subsequently, the parties engaged Andre G. Bouchard, former Chancellor of the Delaware Court of Chancery, to conduct mediation in aid of settlement. An initial mediation session, attended by counsel for the Settling Parties and presided over by former Chancellor Bouchard, was held on July 31, 2024. Thereafter, the parties stipulated to further extend the stay of the Action until November 4, 2024 to continue their mediation efforts, which was granted by Court Order. Following a second mediation session held on September 16, 2024 and extensive settlement discussions thereafter, the Settling Parties agreed to the Settlement, pursuant to which (i) Defendants Stanley C. Erck and John A. Herrmann III will pay or cause to be paid the Settlement Amount in consideration for the

Releases described herein, (ii) all Released Claims will be released as to Defendants John Trizzino, Gregory Glenn, David Mott, Michael McManus, and James Young, but no portion of the Settlement Amount will be paid by them or on their behalf, and (iii) the Company will implement corporate governance reforms substantially in the form attached to the Settlement Stipulation as Exhibit A.

13. On November 22, 2024, the Settling Parties entered into the Settlement Stipulation. The Settlement Stipulation reflects the final and binding agreement between the Settling Parties, subject to the approval of the Court.

14. The Settling Parties believe that the Settlement is in the best interests of Novavax and Current Novavax Stockholders and that the Settlement confers benefits upon Novavax and Current Novavax Stockholders and that the interests of the Settling Parties and Current Novavax Stockholders would best be served by settlement of the Action on the terms and conditions set forth in the Settlement Stipulation.

15. On _________ ___, 202_, the Court preliminarily approved the Settlement, authorized this Notice to be provided to Current Novavax Stockholders, and scheduled the Settlement Hearing to consider whether to grant final approval of the Settlement.

## WHAT ARE THE TERMS OF THE SETTLEMENT?

16. As explained in more detail in the Settling Parties' Settlement Stipulation, in consideration for the full and final release, settlement, and discharge of any and all Released Claims against the Released Persons, the Settling Parties have agreed to the following:

> (A) **Monetary Consideration**: Defendants Stanley C. Erck and John A. Herrmann III shall pay, or cause their insurers to pay, the Settlement Amount of $6,750,000.00 in cash to Novavax. Such payment shall be made within fifteen (15) business days after receipt of all the following: (i) a copy of the Court's entry of Judgment; (ii) payment instructions including an IRS W-9 form, bank name and address, account name and number, SWIFT Code, and any other payment information reasonably requested by the insurers; and (iii) verbal verification of payment instructions from an authorized representative of payee, whose contact information shall be provided to the insurers. No payment of the Settlement Amount is to be made by

or on behalf of defendants John Trizzino, Gregory Glenn, David Mott, Michael McManus, or James Young.

(B) **Governance**: Novavax and its Board shall adopt and implement the governance provisions identified in Exhibit A to the Settlement Stipulation upon the final approval of the Settlement.

## WHAT ARE THE PARTIES' REASONS FOR THE SETTLEMENT?

17. Plaintiffs and their counsel thoroughly considered the facts and law underlying the claims asserted in the Action. Plaintiffs and their counsel believe that the claims asserted in the Action have merit, and believe that the Settlement provides substantial and immediate benefits for Novavax and Current Novavax Stockholders. In addition to these substantial benefits, Plaintiffs and their counsel have considered: (i) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (ii) the probability of success on the merits; (iii) the inherent problems of proof associated with, and possible defenses to, the claims asserted in the Action; (iv) the desirability of permitting the Settlement to be consummated according to its terms; (v) the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals; and (vi) the conclusion of the SLC and its counsel that the terms and conditions of the Settlement Stipulation are fair, reasonable, and adequate, and that it is in the best interests of Novavax and Current Novavax Stockholders to settle the Action on the terms set forth in the Settlement Stipulation.

18. The Defendants deny any and all allegations of wrongdoing, liability, violations of law, or damages arising out of or related to any of the conduct, statements, acts, or omissions alleged in the Action, and maintain that their conduct was at all times proper, in the best interests of Novavax and its stockholders, and in compliance with applicable law. The Defendants further deny any breach of fiduciary duties. The Defendants also deny that Novavax or its stockholders were harmed by any conduct of the Defendants alleged in the Action or that could have been alleged in in the Action. Each of the Defendants asserts that, at all relevant times, he acted in good faith and in a manner he reasonably believed to be in the best interests of Novavax and all of its stockholders. Nevertheless, the Defendants wish to eliminate the uncertainty, risk, burden, and expense of further litigation, and to permit the operation of Novavax without further distraction and diversion of its Board and personnel with respect to the Action. The Defendants have therefore determined to settle the Action on the terms and conditions set forth in the Settlement Stipulation solely to put the Released Claims (as defined below) to rest, finally and

forever, without in any way acknowledging any wrongdoing, fault, liability, or damages.

19. The Company, the SLC, and the Individual Defendants acknowledge and agree that the Settlement Amount and the Governance Reforms confer substantial benefits on the Company and its stockholders.

20. Nothing in the Settlement Stipulation shall be construed as any admission by the Defendants of wrongdoing, fault, liability, or damages whatsoever.

## WHAT CLAIMS WILL THE SETTLEMENT RELEASE?

21. If the Settlement is approved, the Court will enter the Judgment (defined below). The Judgment will bar claims, as described in Paragraph 6 and 8 above, related to the facts alleged in the Complaint filed in the Action.

22. Upon entry of the Judgment and the occurrence of the Effective Date (defined below), there will be a release and a bar on further prosecution of the Released Claims (defined below) against the Released Persons (defined below) by Plaintiffs, the SLC, Novavax, and Current Novavax Stockholders to the extent they are acting, or purporting to act, derivatively on behalf of Novavax. Further, by order of the Court, all Current Novavax Stockholders to the extent they are acting, or purporting to act, derivatively on behalf of Novavax, are hereby enjoined against instituting, commencing, prosecuting, continuing, or in any way participating in any action or other proceeding asserting any Released Claims against the Released Persons.

23. "Effective Date" means the first date by which each of the following conditions has been met: (i) Final Approval of Settlement (as defined below); and (ii) the full Settlement Amount has been paid in accordance with the Settlement Stipulation.

24. "Final" means, with respect to any judgment or order, that (i) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal of the judgment or order; or (ii) if there is an appeal from the judgment or order, the date of (a) final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise to review the judgment or order, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review of the judgment or order, and, if certiorari or other form of review is granted, the date of final affirmance of the judgment or order following review pursuant to that grant. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to

attorneys' fees or expenses shall not in any way delay or preclude the Judgment from becoming Final.

25. "Final Approval of Settlement" means that (i) the Court has entered the Judgment—with no material modification to the form of Judgment—approving the Settlement, dismissing the Defendants from the Action with prejudice on the merits and without costs to any party (except any costs specifically identified in the Settlement Stipulation), and providing for the Releases set forth in the Settlement Stipulation; and (ii) such Judgment is Final; ***provided, however***, and notwithstanding any provision to the contrary in the Settlement Stipulation, Final Approval of Settlement shall not include (and the Settlement Stipulation is expressly not conditioned on) the award of attorneys' fees or the payment of expenses to counsel for any Person, including any appeal related to any such award.

26. "Judgment" means the Order and Final Judgment to be entered by the Court, substantially in the form annexed to the Settlement Stipulation as Exhibit D, dismissing the Released Claims with prejudice as against the Released Persons.

27. "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, or any other business or legal entity.

28. "Plaintiffs' Counsel" means Plaintiffs' Co-Lead Counsel (i.e., Levi & Korsinsky LLP, Robbins LLP, and Glancy Prongay & Murray LLP), and any other legal counsel who, at the direction of any Plaintiff or under the supervision of Plaintiffs' Co-Lead Counsel, performed services in the Action.

29. "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, direct or derivative, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including known claims and Unknown Claims (as defined below), whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule (including claims within the exclusive jurisdiction of the federal courts), that are, have been, could have been, could now be, or in the future could, can, or might be asserted, in the Action or in any other court, tribunal, or proceeding (a) by Plaintiffs or any other Current Novavax Stockholder directly or derivatively on behalf of Novavax, or by Novavax directly, against any of the

Released Persons or (b) by the Released Persons against Novavax or any other Released Person, which, now or hereafter, are based upon, arise out of, or relate to any of the actions or inactions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims, or any other matters related to (i) the allegations, claims, and events described in the Complaint, including, for the avoidance of doubt, the claims that were dismissed in the Court's August 21, 2023 Memorandum Opinion and Order and the claims asserted in the Related Actions; (ii) the allegations, claims, and events described in the Litigation Demands, and (iii) the Action and the institution, prosecution and settlement thereof, including the SLC's investigation; ***provided, however***, "Released Claims" shall not include, and neither the Settlement Stipulation nor any aspect of the Settlement shall affect claims relating to enforcement of the Settlement, the Settlement Stipulation, or any other agreement among any or all of the Settling Parties and relevant insurers in connection with the Settlement.

30. "Released Persons" means Novavax, the Defendants, the members of the SLC, Plaintiffs, Plaintiffs' Counsel, and their respective past, present, or future heirs, trusts, trustees, estates, beneficiaries, distributees, agents, employees, fiduciaries, partners, subsidiaries, affiliates, associated entities, stockholders, principals, officers, directors, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, advisors, attorneys, personal or legal representatives, associates, and insurers, co-insurers and re-insurers.

31. "Releases" means the releases set forth in Section II.B of the Settlement Stipulation.

32. "Settlement Amount" means a total of six million seven hundred fifty thousand U.S. dollars in cash ($6,750,000.00).

33. "Unknown Claims" means any claims that Plaintiffs, any Released Person, Novavax, or any other Current Novavax Stockholder does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Claims against any of the Released Persons, including those which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement. With respect to any of the Released Claims, the Settling Parties stipulate and agree that upon Final Approval of the Settlement, they shall be deemed to have, and by operation of the Judgment shall have, expressly waived, relinquished, and released any and all provisions, rights, and benefits conferred by or under California Civil Code § 1542, and any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent

to California Civil Code § 1542.[2] The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those now known or believed to be true by them, with respect to the subject matter of the Released Claims, but it is the intention of the Settling Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all Released Claims without regard to the subsequent discovery of additional or different facts. The Settling Parties acknowledge that the foregoing waiver was separately bargained for and is a key element of the Settlement, and was relied upon by each and all of the Settling Parties in entering into the Settlement.

## HOW WILL THE PLAINTIFFS' ATTORNEYS BE COMPENSATED?

34. Plaintiffs' Counsel have not received any payment for their services in pursuing claims asserted in the Action on behalf of the Company, nor have Plaintiffs' Counsel been paid for their litigation expenses. In connection with final approval of the Settlement, Plaintiffs' Counsel intend to petition the Court for an all-in award of attorneys' fees and litigation expenses to Plaintiffs' Counsel (the "Fee and Expense Award"), to be paid out of the Settlement Amount.

35. Novavax, the Defendants, and the members of the SLC acknowledge and agree that (i) the Action and the efforts of Plaintiffs' Counsel were substantial factors in securing the Settlement Amount and the Governance Reforms; (ii) the agreement on the Settlement Amount and the Governance Reforms was a direct result of the Action; and (iii) the Settlement Amount and the Governance Reforms confer substantial benefits on the Company and its stockholders.

36. In recognition thereof, Novavax, the Defendants, and the members of the SLC agree that Plaintiffs' Counsel are entitled to attorneys' fees and expenses, subject to ultimate Court approval.

---

[2] California Civil Code § 1542 provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

37. The Court will determine the amount of any Fee and Expense Award for Plaintiffs' Counsel. Novavax will cause the full payment of any Court-awarded Fee and Expense Award to Plaintiffs' Counsel. Novavax stockholders are not personally liable for any such fees or expenses.

38. Any failure of the Court to approve a request for attorneys' fees and expenses, in whole or in part, shall not affect the Settlement. No fees or expenses shall be paid to Plaintiffs' Counsel pursuant to the Settlement in the absence of approval by the Court of the Settlement and entry of the Judgment.

39. The Settling Parties further stipulate that Plaintiffs' Counsel may apply to the Court for a service award for each of the Plaintiffs, only to be paid upon Court approval, and to be paid from the Fee and Expense Amount in recognition of Plaintiffs' participation and efforts in the prosecution of the Action. The failure of the Court to approve any requested service award, in whole or in part, shall have no effect on the Settlement. Neither the Company nor any of the Defendants shall be liable for any portion of any service award. Not every Plaintiff will be entitled to the same monetary award.

## WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?

40. **Current Novavax Stockholders do not need to attend the Settlement Hearing. The Court will consider any submission made in accordance with the provisions below even if a Current Novavax Stockholder does not attend the hearing. Current Novavax Stockholders can participate in the Settlement without attending the Settlement Hearing.**

41. Please Note: The date and time of the Settlement Hearing may change without further written notice to Current Novavax Stockholders. In addition, it is possible that the Court may decide to conduct the Settlement Hearing by video or telephonic conference, or otherwise allow Current Novavax Stockholders to appear at the hearing by phone or video, without further written notice to Current Novavax Stockholders. **In order to determine whether the date and time of the Settlement Hearing have changed, or whether Current Novavax Stockholders must or may participate by phone or video, it is important that you monitor the Court docket and the Court's website before making any plans to attend the Settlement Hearing.**

42. The Settlement Hearing will be held on _______________, 202_, at _______ a.m./p.m., before Judge Theodore D. Chuang, either in person at U.S.

District Court for the District of Maryland, Southern Division, 6500 Cherrywood Lane, Greenbelt, MD 20770, or by a remote proceeding such as Zoom or by telephone conference (in the discretion of the Court), to, among other things: (i) determine whether the proposed Settlement, on the terms and conditions provided for in the Settlement Stipulation, is fair, reasonable, and adequate and in the best interests of Novavax and all Current Novavax Stockholders; (ii) determine whether the Court should finally approve the Settlement and enter the Judgment, substantially in the form attached as Exhibit D to the Settlement Stipulation, dismissing the Action with prejudice against Defendants, and extinguishing and releasing the Released Claims as against the Released Persons; (iii) consider Plaintiffs' Counsel's application for a Fee and Expense Award; (iv) hear and determine any objections to the proposed Settlement, the proposed Judgment, or Plaintiffs' Counsel's application for a Fee and Expense Award; and (v) consider any other matters that may properly be brought before the Court in connection with the Settlement.

43. Any Current Novavax Stockholder who continues to own shares of Novavax common stock through the date of the Settlement Hearing and who objects to the proposed Settlement, the proposed Judgment to be entered in connection with the Settlement, or Plaintiffs' Counsel's application for a Fee and Expense Award, or who otherwise wishes to be heard ("Objector"), may appear in person (or, as permitted by the Court, by a remote proceeding such as Zoom or telephone conference if the Settlement Hearing is conducted in such manner) or by his, her, or its attorney at the Settlement Hearing and present any evidence or argument that may be proper and relevant. Objections must be in writing. To object, you must **(1)** file any written objection, together with copies of all other papers and briefs supporting the objection, with the Court at the address set forth below **on or before __________, 2025**; **(2)** serve the papers (electronically, by hand, by first class U.S. mail, or by express service) on Plaintiffs' Counsel, the SLC's Counsel, Defendants' Counsel, and Novavax's Counsel at the addresses set forth below so that the papers are ***received*** **on or before __________, 2025**; and **(3)** email a copy of your objection to gnespole@zlk.com; brobbins@robbinsllp.com; bsachsmichaels@glancylaw.com; bsorrels@wsgr.com; john.reed@us.dlapiper.com; and peter.welsh@ropesgray.com; **on or before __________, 2025**.

| **THE COURT** |
| --- |
| Clerk of the Court<br>United States District Court for the District of Maryland<br>6500 Cherrywood Lane<br>Greenbelt, MD 20770 |

<table>
<tr><th>PLAINTIFFS' COUNSEL</th><th>THE SLC'S COUNSEL</th></tr>
<tr><td rowspan="5">Gregory M. Nespole<br>Levi & Korsinsky, LLP<br>33 Whitehall Street, 17th Floor<br>New York, NY 10004<br><br>Brian J. Robbins<br>Robbins LLP<br>5060 Shoreham Place, Suite 300<br>San Diego, CA 92122<br><br>Benjamin I. Sachs-Michaels<br>Glancy Prongay & Murray LLP<br>745 Fifth Avenue<br>New York, NY 10151</td><td>Brad D. Sorrels<br>Wilson Sonsini Goodrich & Rosati<br>222 Delaware Avenue, Suite 800<br>Wilmington, DE 19801</td></tr>
<tr><th>DEFENDANTS' COUNSEL</th></tr>
<tr><td>John L. Reed<br>DLA Piper LLP<br>1201 North Market Street, Suite 2100<br>Wilmington, DE 19801</td></tr>
<tr><th>COMPANY COUNSEL</th></tr>
<tr><td>Peter L. Welsh<br>Ropes & Gray LLP<br>Prudential Tower<br>800 Boylston St<br>Boston, MA 02199</td></tr>
</table>

44. Any objections must: (i) state the objection is being filed with respect to "*In re Novavax Inc. Stockholder Derivative Litigation*, Master File No. 8:21-cv-02996-TDC"; (ii) state the name, address, and telephone number of the Objector and, if represented by counsel, the name, address, and telephone number of his, her, or its counsel; (iii) be signed by the Objector; (iv) contain a specific, written statement of the objection(s) and the specific reason(s) for the objection(s), including any legal and evidentiary support the Objector wishes to bring to the Court's attention; (v) contain a representation as to whether the Objector and/or his, her, or its counsel intends to appear at the Settlement Hearing, and, if the Objector and/or

his, her, or its counsel does intend to appear, the identity of any witnesses the Objector may call to testify and any exhibits the Objector intends to introduce into evidence at the hearing; and (vi) include (1) documentation sufficient to prove that the Objector is a Current Novavax Stockholder (i.e., owned Novavax common stock as of as of the close of business on November 22, 2024), (2) documentation sufficient to prove that the Objector continues to hold shares of Novavax common stock on the date of filing of the objection, and (3) a statement that the Objector will continue to hold shares of Novavax common stock as of the date of the Settlement Hearing. Documentation establishing ownership of Novavax common stock must consist of copies of an official brokerage account statement, a screen shot of an official brokerage account, or an authorized statement from the Objector's broker containing the information found in an account statement. The Settling Parties are authorized to request from any Objector additional information or documentation sufficient to prove his, her, or its holdings of Novavax common stock.

45. You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

46. If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, assuming you timely file and serve a written objection as described above, you must also file a notice of appearance with the Court and serve it on Plaintiffs' Counsel, the SLC's Counsel, and Defendants' Counsel at the addresses set forth in Paragraph 43 above so that it is ***received*** **on or before _________, 2025**. Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Objectors who intend to appear at the Settlement Hearing through counsel must also identify that counsel by name, address, and telephone number. Objectors and/or their counsel may be heard orally at the discretion of the Court.

47. You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing. However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Counsel at the addresses set forth in Paragraph 43 above so that the notice is ***received*** **on or before _________, 2025**.

48. The Settlement Hearing may be adjourned by the Court without further written notice to Current Novavax Stockholders. If you intend to attend the

Settlement Hearing, you should confirm the date and time by checking the Court's website.

49. **Unless the Court orders otherwise, any Current Novavax Stockholder who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement. Current Novavax Stockholders do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

## WHAT IF I OWNED SHARES ON SOMEONE ELSE'S BEHALF?

50. Brokerage firms, banks, and/or other persons or entities who held shares of Novavax common stock as of the close of business on November 22, 2024 for the benefit of others are requested to promptly send this Notice to all of those respective beneficial owners, either by physical mailing or by electronic means. Specifically, nominees must either (i) within seven (7) calendar days of receipt of this Notice, request from [ ] (the "Settlement Administrator") sufficient copies of the Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Notices forward them to all such beneficial owners; or (ii) within seven (7) calendar days of receipt of this Notice, provide a list of the names and addresses of all such beneficial owners to Novavax Inc. Stockholder Derivative Litigation, c/o [ ]. If you choose the second option, the Settlement Administrator will send a copy of the Notice to the beneficial owners you have identified on your list, either by physical mailing or by electronic means. Copies of this Notice may also be obtained by emailing the Settlement Administrator at info@______.com.

51. Regardless of whether you choose to complete the physical or electronic mailing yourself or elect to have such mailing performed for you, you may obtain reimbursement for reasonable administrative costs actually incurred in connection with forwarding the Notice up to $0.20 per record plus postage (if applicable), upon submission of the appropriate documentation to the Settlement Administrator.

## CAN I SEE THE COURT FILE? WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

52. This Notice contains only a summary of the terms of the proposed Settlement. For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Settlement Stipulation, which may be inspected during regular office hours at the Clerk of the Court, U.S. District Court for the District of Maryland, 6500 Cherrywood Lane,

Greenbelt, MD 20770. You must appear in person to inspect these documents. The Register's office will not mail copies to you. For more information concerning the Settlement, you may also call or write to the attorneys for the Plaintiffs or the SLC, whose contact information is provided above.

**DO NOT CALL OR WRITE THE COURT OR CLERK OF THE COURT REGARDING THIS NOTICE.**

Dated: ______________, 202_ BY ORDER OF THE COURT

# EXHIBIT D

**EXHIBIT D**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE NOVAVAX INC. STOCKHOLDER DERIVATIVE LITIGATION | Master File No.: 8:21-cv-02996-TDC |
| This Document Relates To:<br><br>ALL ACTIONS | (Consolidated with: No. 8:22-cv-01415-TDC and No. 1:22-cv-01417-TDC) |

**[PROPOSED] FINAL JUDGMENT AND ORDER**
**APPROVING DERIVATIVE SETTLEMENT**

WHEREAS, a consolidated stockholder derivative action is pending in this Court titled *In re Novavax Inc. Stockholder Derivative Litigation*, No. 8:21-cv-02996-TDC;

WHEREAS, a Stipulation of Compromise, Settlement, and Release (the "Stipulation") was made and entered into as of November 22, 2024, by and among: (i) the Special Litigation Committee of the Board of Directors of Novavax Inc. (the "Special Litigation Committee" or "SLC"); (ii) Amy Snyder, Charles R. Blackburn, Michele Rosati, Robert Meyer, as beneficiary of the Robert E. Meyer (IRA), and Shui Shing Yung (collectively, "Plaintiffs"); (iii) nominal defendant Novavax Inc.

("Novavax" or "the Company"), a Delaware corporation; (iv) Defendants Stanley C. Erck, John J. Trizzino, Gregory M. Glenn, John A. Herrmann III, David M. Mott, Michael A. McManus, and James F. Young (collectively, the "Defendants");

WHEREAS, by order dated ________ ___, 20__ (the "Preliminary Approval Order"), the Court (a) preliminarily approved the Settlement; (b) ordered that notice of the proposed Settlement be provided to Novavax stockholders; (c) provided Novavax stockholders with the opportunity to object to the proposed Settlement and Plaintiffs' Co-Lead Counsel's application for an award of attorneys' fees and expenses; and (d) scheduled a hearing regarding final approval of the settlement;

WHEREAS, the Court conducted a hearing on ________, 202_ to consider, among other things, (a) whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to Novavax and its stockholders, and should be approved by the Court; (b) whether a judgment should be entered dismissing the claims in the Action with prejudice; and (c) whether the application by Plaintiffs' Co-Lead Counsel for an award of attorneys' fees and expenses should be approved; and

WHEREAS, it appearing that due notice of the terms of the Settlement and Releases and the Settlement Hearing has been given in accordance with the Preliminary Approval Order, the Parties having appeared by their respective attorneys of record, the Court having heard and considered the submissions and

evidence presented in support of the proposed Settlement, the opportunity to be heard having been given to all other persons requesting to be heard in accordance with the Preliminary Approval Order, and the Court having determined that notice of the proposed Settlement was adequate and sufficient, and the entire matter of the proposed Settlement having been heard and considered by the Court;

**IT IS HEREBY ORDERED,** this ___ day of ______________, 202_ that:

1. Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in the Stipulation and the Preliminary Approval Order.

2. The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement of the Action, as well as personal jurisdiction over all of the Parties and each of the Current Novavax Stockholders, and it is further determined that the Settling Parties and all Current Novavax Stockholders, as well as their transferees, heirs, executors, successors, and assigns, are bound by this Order and Final Judgment (the "Judgment").

3. The Notice has been provided to Current Novavax Stockholders pursuant to and in the manner directed by the Preliminary Approval Order, proof of mailing of the Notice was filed with the Court, and full opportunity to be heard has been offered to all Settling Parties and Current Novavax Stockholders. The Court finds that the form and means of the Notice was the best notice practicable under the circumstances and was given in full compliance with the requirements of Rule 23.1

of the Federal Rule of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable law and rules, and that all Current Novavax Stockholders, as well as their transferees, heirs, executors, successors, and assigns, are bound by this Judgment.

4. Based on the record in the Action, each of the provisions of Rule 23.1 of the Federal Rules of Civil Procedure have been satisfied, and the Action has been properly maintained according to the provisions of Rule 23.1.

5. The Court finds that the Settlement is fair, reasonable, adequate, and in the best interests of Novavax and Current Novavax Stockholders.

6. Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, this Court fully and finally approves the Settlement in all respects, and the Settling Parties are directed to consummate the Settlement in accordance with the terms of the Stipulation. The Clerk of the Court is directed to enter and docket this Judgment.

7. The Action is hereby dismissed with prejudice as to the Settling Parties and all Current Novavax Stockholders. The foregoing dismissal is without fees or costs, except as otherwise provided in Paragraph 13 below or as otherwise provided in the Stipulation or the Preliminary Approval Order.

8. Upon the Effective Date, Plaintiffs, the members of the SLC, the Company, the Current Novavax Stockholders, the Defendants, and all of their respective successors-in-interest, predecessors, representatives, trustees, executors,

administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, shall be deemed to have, and by operation of this Judgment shall have, completely discharged, dismissed with prejudice on the merits, released and settled, to the fullest extent permitted by law, the Released Claims against the Released Persons and shall be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any of the Released Claims against any of the Released Persons.

9. The Settling Parties are hereby authorized, without further approval from the Court, to agree to adopt such amendments, modifications, and expansions of the Stipulation that are consistent with this Judgment and the Stipulation and that do not materially limit the rights of the Settling Parties or Current Novavax Stockholders under the Stipulation. Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

10. Nothing in this Judgment shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Stipulation.

11. Neither this Judgment, nor the Settlement, nor any act or omission in connection therewith shall be deemed or argued to be evidence of or to constitute an admission or concession by: (a) the Defendants as to (i) the truth of any fact alleged

by Plaintiffs, (ii) the validity of any claims or other issues raised, or which might be or might have been raised, in the Action or in any other litigation, (iii) the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or (iv) any wrongdoing, fault, or liability of any kind by any of them, which each of them expressly denies; or (b) Plaintiffs that any of their claims are without merit, that any of the Defendants or Released Persons had meritorious defenses, or that damages or other relief recoverable in the Action would not have exceeded the terms of the Settlement. The Settling Parties or any Released Persons may file the Stipulation and/or this Judgment in any action that has been or may be brought against them in order to support a claim or defense based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim or in connection with any insurance litigation.

12. In the event that the Settlement is terminated pursuant to Paragraph 6.1 of the Stipulation or the Effective Date otherwise fails to occur for any other reason, then (i) the Settlement and the Stipulation (other than Section VI and Paragraph 3.5 thereof) shall be canceled and terminated; (ii) this Judgment and any related orders entered by the Court in this Action shall in all events be treated as vacated, *nunc pro tunc*; (iii) the Releases provided under this Judgment and the Stipulation shall be null and void; (iv) to the extent the Settlement Amount has been paid, it shall be

repaid by Novavax to the persons and entities (including the insurers) who paid on behalf of the Defendants within fifteen (15) business days after termination of the Settlement; (v) the fact of the Settlement shall not be admissible in any proceeding before any court or tribunal; (vi) all proceedings in the Action shall revert to their status as of immediately prior to filing of the Stipulation of Settlement on November 22, 2024; and no materials created by or received from another Settling Party that were used in, obtained during, or related to settlement discussions shall be admissible for any purpose in any court or tribunal, or used, absent consent from the disclosing Settling Party, for any other purpose or in any other capacity, except to the extent that such materials are otherwise required to be produced during discovery in any other litigation; (vii) the Settling Parties shall jointly petition the Court for a revised schedule for further proceedings; and (viii) the Settling Parties shall proceed in all respects as if the Settlement and the Stipulation (other than Section VI and Paragraph 3.4 thereof) had not been entered into by the Settling Parties.

13. Plaintiffs' Counsel are awarded attorneys' fees and expenses in the sum of $______________ ("Fee and Expense Award"), which the Court finds to be fair and reasonable, to be paid in accordance with the terms of the Stipulation.

14. Plaintiffs are awarded a service award ("Service Award") of $__________, in recognition of their participation and efforts in the prosecution of the Action to be awarded from the Fee and Expense Award.

15. No proceedings or Court order with respect to any Fee and Expense Award shall in any way disturb or affect this Judgment (including precluding the Judgment from being Final or otherwise being entitled to preclusive effect), and any such proceedings or Court order shall be considered separate from this Judgment.

16. Nothing in this Judgment dismisses or releases any claim by or against any Settling Party arising out of a breach of the Stipulation or violation of this Judgment.

17. Without affecting the finality of this Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration, enforcement, and consummation of the Settlement and this Judgment.

18. There is no just reason to delay the entry of this Judgment as a final judgment in the Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in the Action.

**IT IS SO ORDERED.**

____________________________________

THE HONORABLE THEODORE D. CHUANG
UNITED STATES DISTRICT JUDGE

Dated: